**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jimmy C. MARTINEZ,
Defendant-Appellant.**

**No. 81–2460
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Dec. 7, 1982.

Henry S. Coltzer (court-appointed), Galveston, Tex., for defendant-appellant.

John M. Potter, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge.

Appellant Martinez was convicted of transporting a stolen automobile across interstate lines in violation of the Dyer Act, 18 U.S.C. § 2312.[1] We affirm.

Two witnesses positively identified Martinez as being in a used-car lot in Pensacola, Florida, on the morning of May 7, 1981. According to one of the witnesses, Martinez said that he wanted to take a 15- to 30-minute test-drive in a blue 1979 Chevrolet and show it to his son's fiancée before purchasing it. Martinez did not return; neither did the car.

At 11:30 p.m. on May 7 Martinez was spotted in Chambers County, Texas, by a Liberty County, Texas, deputy sheriff. Martinez was in the blue 1979 Chevrolet parked off I–10. A computer check showed that the car had been reported stolen out of Florida that day. The deputy sheriff arrested Martinez.

Martinez chose not to testify in his own defense. His sole defense was to show the jury the tattoos on his arms as an attempt to prove mistaken identification by the used-car salesman who had not mentioned the tattoos in his testimony identifying Martinez.

Martinez presents three arguments on appeal: insufficiency of evidence; impermissible jury instructions under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); failure of instructions correctly to apply the applicable law to the facts of the case.

After due consideration we find no merit in the first or third contentions. Viewing the facts most favorably to the government, as we are bound to do in this case under *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the evidence clearly supports the jury's verdict. As to point three, the instructions set forth the necessary elements of violation of the Dyer Act and the pertinent facts as proved. This was a simple case with no complex fact situations which would require complex jury instructions. The instructions explained the jury's role properly.

The *Sandstrom* issue is somewhat more involved.

The elements which the government must prove to establish a Dyer Act violation are that there was a stolen vehicle, that the defendant knew that the vehicle was stolen and that the vehicle was transported by the defendant in interstate commerce. *United States v. Gresham,* 585 F.2d 103, 106 (5th Cir.1978).

Knowledge that the car was stolen is thus one of the necessary elements of the crime. In this regard, the district court gave the jury the following instruction:

As a general rule, it is reasonable to infer that a person ordinarily intends all the natural and probable consequences of acts knowingly done or knowingly omitted. So, the jury may draw the inference and find that the accused intended all natural and probable consequences which one, standing in like circumstances, and possessing like knowledge, should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.

Martinez, who did not object to the instruction at the time, now urges that this instruction violated his due process rights. Specifically, he argues that, because he did not testify, the instruction diluted effectively the government's burden of proof as to the issue of knowledge or intent and, indeed, shifted that burden impermissibly.

In *Sandstrom* the defendant was charged with "deliberate homicide" in that he "purposely or knowingly caused" the homicide. The defendant did not deny committing the homicide; rather, he argued that he had personality disorders which were exacerbated by drinking problems. He based his defense on a refutation of intent.

The jury there was instructed that "the law presumes that a person intends the

---

1. "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

ordinary consequences of his voluntary acts." The Court held that this instruction violated the state's Fourteenth Amendment burden of proving every element of the offense beyond a reasonable doubt. The Court pointed out that the jury could have interpreted the instruction as a mandatory or conclusive presumption of intent, 442 U.S. at 513, 517, 99 S.Ct. at 2454, 2456, or as shifting the burden of proof. 442 U.S. at 517, 99 S.Ct. at 2456.

Prior to *Sandstrom,* this court had considered the "presumption of intent" instructions in a number of cases. In *United States v. Chiantese,* 560 F.2d 1244 (5th Cir. 1977) (en banc), cited with approval in *Sandstrom,* 442 U.S. at 514 n. 3, 99 S.Ct. at 2454 n. 3, we attempted to review the apparently inconsistent opinions issued on this point and to achieve some uniformity. We noted at the outset that

> to say that specific intent may be inferred from a defendant's knowing conduct seems only to iterate a truism. The problems start when words are changed or added which shift the prosecution's burden of proof and when the charge is used where the defendant's act is equally susceptible of innocent motive and guilty purpose.

560 F.2d at 1245.

After reviewing the most significant of the twists and turns, we then set forth some do's and don't's. The don't's were as follows:

> No district court in this circuit shall include in its charge to the jury an instruction on proof of intent which is couched in language which could reasonably be interpreted as shifting the burden to the accused to produce proof of innocence. This includes charges such as:
>
>> It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. *So unless the contrary appears from the evidence,* the jury may draw the inference that the accused intended all the conse-

quences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.

or

> The *presumption* is that a person intends the natural consequences of his acts and the natural presumption would be if a person consciously, knowingly, or intentionally acted, he intends to violate the law.

or

> The law *presumes* that every man intends the natural and probable consequences of his own knowing acts. Wrongful acts knowingly or intentionally committed can neither be justified or excused on the ground of innocent intent. The intent to injure or defraud can be *presumed* when the lawful act which results in loss or injury is proved to have been knowingly committed.

*Id.* at 1255.

The court then set forth a generally acceptable instruction:

> It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. The jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the government has proved beyond a reasonable doubt that the defendant possessed the required criminal intent.

*Id.* at 1255–56.

The salient differences between the acceptable and the unacceptable instructions are that there is no mention of a "presumption" in the acceptable instruction,[2] and that the inference is allowed rather than required. "The jury may draw the inference . . . ."

---

**2.** As the Court noted in *Sandstrom,* 442 U.S. at 517, 99 S.Ct. at 2455, to presume is "to suppose to be true without proof," quoting Webster's New Collegiate Dictionary 911 (1974).

In *Chiantese* we noted that the instruction must be viewed in the context of the case. 560 F.2d at 1255. Context was particularly important in *United States v. Fricke,* 684 F.2d 1126 (5th Cir.1982), in which a Texas Department of Public Safety official beat a handcuffed man senseless in front of two other men after that man had beaten the public official in a local bar. The instruction to the jury was that

> With regard to the specific intent, you are instructed that intent is a state of mind and can be proven with circumstantial evidence. Indeed, it can rarely be established by any other means. In determining whether this element was present, you may consider all the attendant circumstances of the case.
>
> I charge you that a person ordinarily is presumed to intend all the natural and probable consequences of an act knowingly done. The burden of proof as to each element of the offense remains, however, with the Government.
>
> If you find that the defendants knew what they were doing and that they intended to do what they were doing, and if you find that what they did constituted a deprivation of a constitutional right, then you may conclude that the defendants acted with the specific intent to deprive the victim of that constitutional right.

684 F.2d at 1128.

The defendant in *Fricke* did not object to the instruction. Because the claimed due process violation "at least approaches constitutional stature" however, the court used the harmless error test. *Id.,* citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1976).[3]

The court noted that "the proof of Fricke's guilt was nearly overwhelming." 684 F.2d at 1129. "Under these circumstances, if a jury concluded that a beating took place, it would undoubtedly encompass a finding that the defendant had the requisite intent. . . . It is plain that Fricke had the requisite specific intent." *Id.*

■ We find the instruction in this case, when coupled with the unambiguous fact situation, constitutional. We do not consider the instruction in error, harmless or otherwise.

Simply put, the jury was instructed that it was permissible to infer from the testimony, if the jury believed it, that the defendant knew the car was wrongfully taken. *There was no burden-shifting involved in the instruction, nor was there a conclusory presumption.*

Martinez would have us find the instruction was somehow flawed in view of his choice *not to* testify. This instruction places him in no more or no less damaging position regardless of whether he did or did not testify. His testimony would not have affected, or drawn into issue, the evidence of intent since his defense apparently was that he did not take the car, period. Questions as to intent would never have gotten beyond "not only did I not mean to do it, I *didn't* do it." Here, based on the overwhelming evidence, the jury simply believed that he did in fact steal the car from the Florida used-car lot, thus providing the requisite knowledge of the stolen nature of the vehicle. This would have been the same jury issue if he had testified as to whether he did or did not steal the car as per the testimony of the government's witnesses. There is no suggestion in the record or in the briefs on appeal of a defense that admits the fact of taking the car but disavows knowledge or awareness of the wrongful nature of what was done.

We do not here endorse the instruction used by the district court for use in every criminal trial.[4] In this trial, however, it

---

3. The court found the defendant's failure to object "significant." "It supports a determination that specific intent was not a critical question in the case." 684 F.2d at 1129.

4. Although the instruction comes very close to that approved in *Chiantese,* quoted *supra,* it differs in that it does not instruct the jury that the inference is entitled to be weighed in assessing whether the government has met its burden of proof. This omission is not significant here, however. As stated, the burden was not shifted by the instruction. Other instructions given the jury amply reinforced that ever-

was not constitutionally infirm. It merely allowed the jury to arrive at the necessary question of intent the only way possible, by inference from the credible evidence it had before it. It could either believe the testimony or not. Pursuant to this instruction, the inference was neither presumed nor mandatory. The jury could infer intent or not. It was the jury's choice. The defendant was not required to disprove intent; rather, by its proof of the facts, the government had, if the jury chose to believe the testimony, proved intent. And the defendant did not rebut that unspoken, but nevertheless persuasive, proof of intent.[5]

We find the instruction proper in this case and the judgment of the lower court is therefore

AFFIRMED.

present burden. So this is not a matter of trying to cure the infirmity through other instructions, as was proscribed in *Chiantese*, 560 F.2d at 1255.

5. As noted in *Suggested Forms for Use in Criminal Cases*, 20 F.R.D. 231 (1957) (Mathes,

J.), intent "rarely can be established" except by circumstantial evidence. "[T]here can be no eye-witness account of the state of mind" with which an act is committed. Quoted in *Chiantese*, 560 F.2d at 1249. See also the instruction from *Fricke*, quoted *supra*.