741 F.2d 680
 UNITED STATES of America, Appellee,
v.
James Lee SPOONE, Sr., Appellant.
UNITED STATES of America, Appellee,
v.
James Lee SPOONE, Jr., Appellant.
UNITED STATES of America, Appellee,
v.
Michael Elbin SPOONE, Appellant.
UNITED STATES of America, Appellee,
v.
Kenneth Howard BATES, Appellant.
UNITED STATES of America, Appellee,
v.
Richard VAN BAEL, Appellant.
UNITED STATES of America, Appellee,
v.
Juliette GAY, Appellant.
 Nos. 81-5260(L), 81-5261 to 81-5265.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 9, 1984.
Decided Aug. 8, 1984.
 
 Jan S. Strifling, Jack B. Swerling, Richard M. Kennedy, III, John R. Lester, Columbia, S.C. (J. Edward Holler, Columbia, S.C., O.W. Bannister, Jr., Greenville, S.C., on brief), for appellants.
 Marvin J. Caughman, Asst. U.S. Atty., Columbia, S.C. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., on brief), for appellee.
 Before PHILLIPS, MURNAGHAN and SPROUSE, Circuit Judges.
 SPROUSE, Circuit Judge.
 
 
 1
 James L. Spoone, Sr., Michael E. Spoone, James L. (Rusty) Spoone, Jr., Kenneth Howard Bates, Juliette Gay, and Richard Van Bael were tried together and convicted by a jury of a variety of charges stemming from their participation in an auto-theft conspiracy. Individually and variously, they challenge their convictions of conspiracy to transport in interstate commerce motor vehicles they knew to have been stolen, in violation of 18 U.S.C. Sec. 2312, and conspiracy to receive, conceal, store, barter, sell, and dispose of stolen vehicles that had moved in interstate commerce, in violation of 18 U.S.C. Sec. 2313, 18 U.S.C. Sec. 371; transporting in interstate commerce motor vehicles they knew to have been stolen, 18 U.S.C. Sec. 2312; and aiding and abetting, 18 U.S.C. Sec. 2. We affirm the convictions on all counts of appellants James Spoone, Sr., Rusty Spoone, Bates, Gay, and Van Bael. We affirm Michael Spoone's conspiracy conviction, but reverse his convictions for three substantive offenses.I
 
 
 2
 The conspiracy involved in this appeal began in November, 1979 and continued until April, 1980. The evidence viewed in the light most favorable to the government reflects that James L. Spoone, Sr., a used car dealer in South Carolina, masterminded the auto-theft scheme in which all appellants were ultimately found to have participated. The essence of the conspiracy was the theft of automobiles in North and South Carolina, the transfer of the title certificates and identification numbers from wrecked cars to the stolen vehicles, and the transport to and sale of the stolen cars in the Detroit, Michigan area. The first proven overt act of the conspiracy occurred on November 5, 1979, when Spoone, Sr. bought a wrecked 1976 Pontiac Trans Am from an automobile salvage company, in the name of his auto dealership. The next day, he bought a wrecked 1978 Datsun pickup truck from the same salvage company. His son, Michael E. Spoone, transferred title ownership to the wrecked Datsun from its previous owner to his father's dealership.
 
 
 3
 Motel records and Spoone, Sr.'s telephone records showed that on November 18, 1979, Spoone, Sr. visited Fayetteville, North Carolina. On the day of his visit, a 1978 Datsun pickup truck similar to the wreck Spoone, Sr. had purchased from the salvage company was stolen from a used car lot in Fayetteville. About a week later, an FBI agent saw the stolen Datsun parked in front of the Spoone residence in South Carolina. Soon afterwards, Spoone, Sr. began running classified ads promoting the sale of a Datsun pickup truck.
 
 
 4
 In December, 1979, Neal Hodgson, an FBI "confidential informant" who successfully infiltrated the auto-theft conspiracy, flew from Detroit, Michigan to Columbia, South Carolina, at Spoone, Sr.'s request, to pick up a Trans Am. Spoone, Sr. and Michael met him at the airport and took him to the Spoone residence. Spoone, Sr. later met alone with Hodgson and showed him the stolen Datsun, which Spoone, Sr. reported "he and the boys had picked up" in North Carolina. Hodgson left the Spoone residence driving the Datsun and met with FBI agent Dick Oyler at a prearranged location. Oyler confirmed that the Datsun had been stolen and the original vehicle identification number (VIN) and certificate of title replaced with the wreck's VIN and title. Hodgson then drove the Datsun to the Detroit, Michigan area.
 
 
 5
 The following weekend, Spoone, Sr. and his sons, Michael E. and James L. (Rusty) Spoone, Jr. arrived in Michigan where Spoone, Sr. intended to sell the pickup to a purchaser Hodgson had located. On December 3, 1979, Hodgson introduced Spoone, Sr. to Keith Cordes, an FBI undercover agent, at the Red Roof Inn in Troy, Michigan. Cordes purchased the Datsun from Spoone, Sr. while FBI surveillance officers tape-recorded and photographed the entire transaction. Only Spoone, Sr., Cordes, and Hodgson were present during the sales transaction.
 
 
 6
 On January 11, 1980, a 1976 Pontiac Trans Am similar to the wrecked Trans Am Spoone, Sr. had purchased in November, 1979 was stolen from a gasoline station in Columbia, South Carolina. Seven days later, Spoone, Sr. registered two adults at the Red Roof Inn in Troy, Michigan, though Hodgson testified that both sons made the trip. FBI agents observed Rusty drive away from the motel parking lot in the Trans Am stolen in South Carolina. Later that evening, Neal Hodgson bought the car from Spoone, Sr. with $1,000 furnished him by the FBI. Agents later determined that the VIN and certificate of title from the wrecked Trans Am had been transferred to the stolen vehicle. Hodgson testified that Spoone told him "he and the boys" were in Michigan looking for a Buick to steal, but there is no evidence that the Spoones ever stole a Buick there. Evidence introduced at trial did reveal, however, that Spoone, Sr. had purchased a wrecked 1979 Buick Regal from the salvage yard in December, 1979.
 
 
 7
 On February 17, 1980, Hodgson told FBI agent Oyler that Spoone, Sr. was planning to steal another car. That evening, FBI surveillance agents followed Spoone, Sr., Michael, and Rusty from their residence to a restaurant and later to the Essex Park Apartment Complex in Columbia. The Spoones remained in the parking lot of the complex until at least 10:20 that evening, when agents lost sight of the Spoone vehicle as it left the parking lot. At 1:30 a.m., agent Oyler telephoned the Spoone residence; Michael answered and told Oyler that neither Rusty nor his father was home. Some time between midnight and nine a.m. on February 18, 1980, a late-model Buick Regal was stolen from the parking lot of the Essex Park apartment complex.
 
 
 8
 On February 19, 1980, FBI agents spotted Spoone, Sr. and Rusty leaving the Red Roof Inn in Roseville, Michigan. A surveillance team followed the two Spoones, who were driving the Buick Regal stolen the day before, to Kenneth Howard Bates's photography studio in Mt. Clemens, Michigan. There, FBI agents observed Rusty working with a screwdriver in the dashboard area of the Buick where its VIN was located. The next morning the FBI set up surveillance at a residence just outside of Mt. Clemens, where the Buick was then parked. Shortly after dawn, they again observed Rusty working in the dashboard area of the Buick. Spoone, Sr. and Rusty returned in the Buick to Bates's photography studio, where agents saw Rusty affix a white object to the inside door of the car where the federal vehicle identification sticker is ordinarily located. Some time afterwards, Spoone, Sr. sold the Buick to Richard Van Bael. When the FBI recovered the car several weeks later, they discovered that the VIN and title certificate on the stolen car belonged to the wrecked Buick Spoone, Sr. had bought in December, 1979, and that the federal vehicle identification had been replaced.
 
 
 9
 In February, 1980, Spoone, Sr. paid an auto mechanic $500 for a wrecked late model Ford Mustang; the transaction took place at Bates's photography studio, with Bates present. In late February or early March, a white Mustang Cobra was stolen from an automobile dealership in Lexington, South Carolina. Soon afterwards, Spoone, Sr. telephoned Bates from South Carolina and told him that he was short of cash and would be coming to Michigan with a car to sell. On March 7, 1980, Juliette Gay, an employee of Van Bael, went to her credit union with Spoone, Sr. and her then-boyfriend Rick Warren, and took out a $4,000 loan. Gay immediately endorsed the check over to Spoone, Sr. in the name of his auto dealership. Rick Warren took possession of the Mustang Cobra Spoone, Sr. had brought up from South Carolina and began running classified advertisements offering to sell the car. Gay testified that she had obtained the loan for Warren because he could not secure financing, and that Warren had possession of the car until he surrendered it to Neal Hodgson about three weeks later. She said she did not know when she bought the car that it had been stolen.
 
 
 10
 On March 30, 1980, Spoone, Sr. called Hodgson to tell him that the FBI was closing in on Spoone's operation, and instructed Hodgson to recover the cars he had sold in Michigan and destroy them. Hodgson telephoned Bates to get Van Bael's phone number, then called Van Bael and told him he was coming to get the car because the FBI was moving in on the conspiracy. By the time Hodgson arrived along with undercover FBI agent Snider, Van Bael had apparently called Spoone to confirm Hodgson's story. He gave Hodgson the door key to his Buick and informed him that the ignition key was in the car. Hodgson told Van Bael they were taking the Buick to be crushed and he should not report the car stolen for two days. Van Bael reported the car as stolen the next day and also filed an insurance claim on the car, for which he received $5,225.
 
 
 11
 Van Bael also told Hodgson that he, Van Bael, had access to the stolen Mustang and would try to make it available to Hodgson within a day or two. Apparently, Van Bael told Warren that Hodgson wanted the Mustang; Warren in turn told Gay that the Mustang was a hot car, and the original thieves now wanted to steal the car back. Gay testified that she became quite upset when she learned her car was a stolen vehicle, but nonetheless turned over the keys to Warren. Three days later, Gay reported to a local police officer that her car had been stolen from a movie theatre parking lot. She also filed an insurance claim on her car and recovered approximately $5,600.
 
 II
 
 12
 James L. Spoone, Sr.--Spoone, Sr. was convicted of one conspiracy count and five substantive counts of transporting a stolen vehicle in interstate commerce. He argues (1) that the trial court's refusal to grant a mistrial when co-defendant Bates called him to testify effectively abridged his fifth amendment privilege against self-incrimination; and (2) that the court erred in admitting Spoone's long distance telephone records, which showed numerous telephone calls that were wholly unrelated to the conspiracy charged.
 
 
 13
 We need not linger long on either of these contentions. The jury was unlikely to have drawn a negative inference from Spoone's refusal to testify on behalf of Bates. It was excused immediately after Bates's attorney called Spoone, and did not return until the following day. At that time the trial court told the jury that it could not "draw any unfavorable inference of any kind against Mr. Spoone or any other defendant for that matter who does not testify, because he is merely exercising a valid constitutional right." It also gave exhaustive jury instructions outlining the scope of the fifth amendment privilege against self-incrimination. Any potential prejudice was cured by these remedial measures. Cf., e.g., United States v. Mason, 661 F.2d 45, 47-48 (5th Cir.1981).
 
 
 14
 Nor do we find that the district court erred in admitting Spoone's long distance telephone records. The toll sheets were carefully marked to isolate the relevant telephone calls; the marked calls, in turn, were highly relevant to show Spoone, Sr.'s involvement in the scheme, as they placed him in various locations at times crucial both to the conspiracy and to the substantive counts alleged in the indictment. Whether their prejudicial effect substantially outweighed their relevance was a matter within the sound discretion of the trial court; we will not disturb its decision to admit the records in the absence of a clear showing of abuse. United States v. Masters, 622 F.2d 83, 87-88 (4th Cir.1980).
 
 
 15
 Michael E. Spoone --Michael was charged with and convicted on a conspiracy count and three substantive counts of transporting in interstate commerce or aiding and abetting the transport in interstate commerce of a stolen automobile. He contends that the evidence was not sufficient to sustain any of the convictions, and also argues that hearsay evidence in the form of his father's out-of-court statements was improperly admitted.
 
 
 16
 We first consider Michael's challenge to the conspiracy conviction. The government unquestionably produced enough evidence to prove the existence of a conspiracy to transport stolen cars. Apart from the alleged hearsay evidence to which Michael objects, the government's proof respecting Michael consisted of evidence showing that he (1) participated in purchasing the Datsun wreck whose title certificate and VIN were eventually transferred to a stolen vehicle; (2) accompanied his father to pick up Hodgson at the airport the day before a stolen automobile was transported interstate; (3) accompanied his father on at least one trip to Michigan made for the purpose of selling a stolen automobile; and (4) "cruised" the Essex Park parking lot for nearly two hours with his father and brother the same evening that a Buick Regal was stolen from the lot. " 'Once the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of the defendant with the conspiracy, even though the connection is slight, is sufficient to convict him with knowing participation in the conspiracy.' United States v. Dunn, 564 F.2d 348, 357 (9th Cir.1977)." United States v. Laughman, 618 F.2d 1067, 1076 (4th Cir.) (emphasis in original), cert. denied, Y447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). Because this evidence was alone enough to convict Michael of conspiracy, his father's out-of-court statements concerning his participation in actual thefts were admissible under Federal Rule of Evidence 801(d)(2)(E), which provides that statements of a co-conspirator made during the course and in furtherance of the conspiracy are not hearsay. See generally United States v. Stroupe, 538 F.2d 1063, 1065-66 (4th Cir.1976).[1] We therefore affirm Michael's conspiracy conviction.
 
 
 17
 We next address Michael's contention that the evidence did not support his conviction for the three substantive offenses. Michael was charged in three separate counts with transporting or aiding and abetting the interstate transportation of three stolen vehicles, namely: the Datsun pickup, from North Carolina to South Carolina; the Pontiac Trans Am, from South Carolina to Michigan; and the Buick Regal, from South Carolina to Michigan. To establish the section 2312 offense charged in the indictment, the government had to prove that (1) there was a stolen vehicle; (2) the defendant knew that the vehicle was stolen; and (3) the defendant transported the vehicle in interstate commerce. United States v. Martinez, 694 F.2d 71, 72 (5th Cir.1982); United States v. Johnson, 526 F.2d 600, 601 (8th Cir.1975) (per curiam). Mindful that our role is limited to determining whether the record contains "substantial evidence" to support each of the elements of the offense charged, see Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), we nonetheless conclude that the government did not prove its case against Michael insofar as the substantive counts are concerned. The record evidence establishes that Spoone, Sr., not Michael, was the defendant who caused each of the vehicles to be transported in interstate commerce and that Michael neither actually or constructively engaged in the transportation. Nor can we conclude that Michael aided or abetted the principal, Spoone, Sr., to commit the substantive offenses. The sole evidence linking Michael to the North Carolina-South Carolina offense was his father's uncorroborated out-of-court statement that "he and the boys had picked up" a Datsun in North Carolina. This isolated statement, which did not necessarily even refer to Michael, plainly does not constitute "substantial evidence" of aiding and abetting. There is no evidence connecting Michael to the acts of transporting the other two stolen vehicles from South Carolina. At most, the record supports an inference that Michael was present in Michigan when the Trans Am was sold to Hodgson. Mere presence at the scene of a crime is not enough to establish that a criminal defendant aided or abetted the criminal venture. See United States v. Van Scoy, 654 F.2d 257, 266-67 (3d Cir.), cert. denied, 454 U.S. 1126, 102 S.Ct. 977, 71 L.Ed.2d 114 (1981); United States v. Camacho, 528 F.2d 464, 468 (9th Cir.), cert. denied, 425 U.S. 995, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976). Respecting the Buick, the evidence that establishes that Michael, with his father and brother, "cruised" the Essex Park Apartment complex the evening the Buick Regal was stolen, though sufficient when viewed in conjunction with the record as a whole to convict Michael of conspiracy, does not likewise support conviction on the substantive count of transporting the Buick interstate. We therefore reverse Michael's convictions on the three substantive offenses.
 
 
 18
 James L. (Rusty) Spoone, Jr.--Rusty, eighteen-year-old son of Spoone, Sr., was convicted of a single conspiracy count.[2] He contends (1) that the trial court improperly admitted evidence pertaining to his activities before his eighteenth birthday; (2) that without this evidence, the jury could not have convicted him; (3) that the court erred in denying Rusty's motion to sever; and (4) that the court erred in refusing to grant Spoone, Sr. a separate trial before Rusty was tried, so that Spoone, Sr. could testify in his son's behalf without jeopardizing his fifth amendment privilege against self-incrimination. Rusty's first three arguments are intertwined, and we treat them together before considering his fourth contention.
 
 
 19
 It is true that Rusty was only seventeen years old when all but one of the overt acts alleged in the conspiracy count occurred. The government, however, offered evidence to show that the conspiracy, as well as his involvement in it, continued past his eighteenth birthday. Rusty argues that a federal district court does not have "jurisdiction" to admit evidence pertaining to a criminal defendant's acts committed while he was a juvenile, even when the adult crime with which he is charged is conspiracy and the "pre-eighteenth birthday acts" relate to a conspiracy that continues past the eighteenth birthday.
 
 
 20
 This novel legal contention, however interesting, finds support in neither logic nor precedent. Unlike most federal offenses, conspiracy is a continuing crime. The Juvenile Delinquency Act does not, of course, prevent an adult criminal defendant from being tried as an adult simply because he first became embroiled in the conspiracy with which he is charged while still a minor, so there is no question that the district court had jurisdiction over the conspiracy prosecution against Rusty. The government presented evidence from which a jury could infer that Rusty's involvement in the conspiracy continued after he turned eighteen--namely, FBI agents' testimony that they saw Rusty tampering in the VIN and federal identification sticker areas of a stolen automobile. The jury was entitled to assess this testimony in light of other evidence showing that Rusty had known of the auto theft scheme since its inception. See Fed.R.Evid. 404(b). There is simply no basis to believe that the jury convicted Rusty of conspiracy solely because of his pre-eighteenth birthday activity, for the trial court repeatedly instructed the jury that it could not consider the juvenile acts as evidence of Rusty's guilt. In these circumstances, we hold that the court acted properly in admitting evidence of Rusty's pre-eighteenth activity.[3]
 
 
 21
 We have little difficulty rejecting Rusty's insufficiency argument. There was ample evidence showing that Rusty knew about and was involved in the auto-theft conspiracy before he turned eighteen. FBI agents' testimony established that on the day Rusty turned eighteen they observed him working in the VIN area of the stolen Buick and later affixed a white object to the inside door of the Buick in the federal identification sticker area. To sustain a guilty verdict against an individual defendant charged with conspiracy, the government need only show the existence of the conspiracy, the defendant's knowledge of the conspiracy's purpose, and some action indicating his participation. United States v. Laughman, supra, 618 F.2d at 1075. See also United States v. Falcone, 311 U.S. 205, 210-11, 61 S.Ct. 204, 206-07, 85 L.Ed. 128 (1940); United States v. Prince, 515 F.2d 564, 567 (5th Cir.), cert. denied, 423 U.S. 1032, 96 S.Ct. 563, 46 L.Ed.2d 406 (1975).
 
 
 22
 We likewise reject Rusty's argument that the court erred in denying his motion to sever. A trial judge's decision not to sever an individual defendant's trial is subject to reversal only for a clear abuse of discretion. United States v. Becker, 585 F.2d 703, 706 (4th Cir.1978), cert. denied, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979). The defendant must show that without the severance he was unable to obtain a fair trial. United States v. Papia, 560 F.2d 827, 836 (7th Cir.1977). The evidence relating to Rusty's activity before his eighteenth birthday, which he now complains prejudiced him, would have been admissible against him in a separate trial to show both the existence of the conspiracy and his knowledge of its purpose.
 
 
 23
 Rusty's claim that the trial court impermissibly conditioned granting his motion to sever on trying Rusty before Spoone, Sr. was tried is equally meritless. At trial, Rusty's father informed the court in camera that he would testify that Rusty was not in Michigan on February 20, 1980, but only if Rusty were tried after his own trial had concluded. Spoone, Sr. placed this condition on his own testimony to prevent it from being used against him in a later trial. The trial court refused to accommodate Rusty's and Spoone, Sr.'s request; as a result, Spoone, Sr. did not testify. In United States v. Becker, supra, 585 F.2d at 706, we held that "[t]here is no abuse of judicial discretion in denying a ... motion for severance when based upon a codefendant's conditional offer to exculpate his fellow codefendants if he is tried first" (emphasis in original). Despite Rusty's efforts to distinguish Becker, we find that case dispositive of this argument.[4]
 
 
 24
 Juliette Gay --Gay argues that the court erred in denying her motions for a judgment of acquittal, for a new trial, and for severance. Bearing in mind the limited scope of our review of such matters, we have examined the record carefully and conclude that Gay's contentions are meritless. Gay's own testimony established that some time after she purchased the Mustang Cobra, her boyfriend Rick Warren told her that the car was "hot." Instead of referring the matter to law enforcement authorities, however, Gay materially aided Warren in disposing of the car, falsely reported that the vehicle had been stolen, and then filed a fraudulent insurance claim. The fact that Gay may not have become involved in the conspiracy until relatively late and possibly did not realize its full extent does not exonerate her of the offense with which she was charged. See generally, United States v. Solomon, 686 F.2d 863, 869 (11th Cir.1982); United States v. Lemm, 680 F.2d 1193, 1204 (8th Cir.1982), cert. denied, 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983).[5] Nor has Gay shown that she was denied a fundamentally fair trial by the court's refusal to sever. Indeed, the fact that Gay was acquitted of the substantive offense of aiding and abetting with which she was charged suggests that the jury was not influenced to convict her on the basis of other defendants' "overwhelming" guilt.
 
 III
 
 25
 Appellants together assert three other claims relating to allegedly erroneous jury instructions. We have examined the instructions complained of in light of appellants' arguments and the case law, and conclude that the instructions do not give rise to reversible error. The judgments of conviction against appellants James Spoone, Sr., James L. Spoone, Jr., Ken Bates, Richard Van Bael, and Juliette Gay are affirmed. The judgment of conviction against Michael Spoone on the conspiracy count is affirmed and the judgment of conviction on the three substantive counts reversed.
 
 
 26
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 The trial court technically erred by allowing the jury to determine whether Spoone, Sr.'s statements were admissible under rule 801(d)(2)(E); admissibility under this subsection is a legal question to be resolved by the trial court on the basis of whether other proffered evidence constitutes "prima facie proof of the conspiracy." United States v. Vaught, 485 F.2d 320, 323 (4th Cir.1973). See United States v. Bolla, 685 F.2d 929, 932 (5th Cir.1982) (per curiam). Because we have independently reviewed the record and have concluded Spoone, Sr.'s statements were admissible, this error, obviously, was harmless
 
 
 [2]
 Rusty was originally indicted on three substantive counts as well as the conspiracy count. After the government discovered that Rusty was only seventeen when he allegedly committed these three substantive offenses, it dismissed all substantive counts against Rusty, as the Juvenile Delinquency Act, 18 U.S.C. Sec. 5031-42, does not allow an individual to be tried as an adult in federal district court for crimes committed while a minor except in narrowly defined circumstances. The government has elected not to proceed against Rusty on the three substantive counts it dismissed in the instant case
 
 
 [3]
 The authority Rusty cites on this point is wholly inapposite. Harrison v. United States, 359 F.2d 214, 223 (D.C.Cir.1965) (en banc) held that "statements elicited from a minor in police custody at a time when he is subject to the original and exclusive jurisdiction of the Juvenile Court are not admissible against him in the event of a subsequent waiver of that jurisdiction and criminal trial in the District Court." The rationale underlying the Harrison principle is clear. The juvenile defendant in Harrison, because he was a juvenile, did not receive the full pre-trial procedural safeguards normally accorded an adult criminal suspect. Specifically, when the police elicited the challenged confession, the juvenile was being held in custody in circumstances that would have been impermissible had he been an adult. Obviously, the state should not be permitted to use in an adult proceeding a confession that it could not have obtained had the juvenile criminal defendant been treated as an adult while in pre-trial custody. Harrison in no sense holds that non-custodial statements or activities of a minor are never admissible in an adult criminal proceeding
 
 
 [4]
 Appellant Bates also asserts this ground for reversing his conviction. He claims that during the course of trial, Spoone, Sr. approached his counsel and said, in essence, that Bates was not involved in the auto-theft conspiracy. Spoone, Sr. refused, however, to testify for Bates unless his trial was severed from and held before Bates's. We reject Bates's argument for the identical reason we have rejected Rusty's
 
 
 [5]
 Appellant Van Bael "adopts and incorporates in his behalf the arguments set forth by his co-defendants/co-appellants." To the extent this statement reflects Van Bael's intention to assert insufficiency and related arguments, we find his contentions to be meritless