993 F.2d 1540
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Jose GUTIERREZ, a/k/a Cuban, a/k/a Pappy, Defendant-Appellant.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Bobby COLEMAN, a/k/a Dirty Red, Defendant-Appellant.
 Nos. 92-5267, 92-5484.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 5, 1993
May 17, 1993
 
 Appeals from the United States District Court for the District of South Carolina, at Aiken. Charles E. Simons, Jr., Senior District Judge. (CR-91-189)
 Argued: Louis Casuso, Miami, Florida; Karen N. Fryar, Columbia, South Carolina, for Appellants.
 William G. Yarborough, III, Assistant United States Attorney, Greenville, South Carolina, for Appellee.
 On Brief: Jack B. Swerling, Columbia, South Carolina, for Appellants.
 John S. Simmons, United States Attorney, Greenville, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 OPINION
 Before WILLIAMS, Circuit Judge, SPROUSE, Senior Circuit Judge, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Jose Gutierrez and Bobby Coleman appeal their criminal convictions for conspiracy to distribute cocaine and crack cocaine, in violation of 21 U.S.C. § 846 (1988). Both challenge the admission of hearsay statements from co-conspirators. Gutierrez also challenges the sufficiency of the evidence to support his convictions on two counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988), and raises several issues regarding his sentences. We affirm their convictions and Gutierrez's sentences.
 
 I.
 
 2
 This case arises out of a lengthy undercover drug investigation targeted at Jose Gutierrez (a.k.a. "Pappy" and"the Cuban"), Michael Bell, and Bobby Coleman (a.k.a. "Dirty Red"). The primary Government witness at trial was Johnnie Mae Terrell. Terrell began working in an undercover capacity in November 1990 in order to get a reduced sentence for her boyfriend, Ezumer Palmer (a.k.a."Shorty"). She initiated a drug trafficking relationship with Bell, who told her that Gutierrez was his supplier. Terrell also personally discussed the price for a kilogram of cocaine with Gutierrez. Terrell testified that she had seen Coleman with Bell during drug transactions, and other witnesses testified that they had bought drugs from Coleman.
 
 
 3
 After a week-long trial, Coleman and Gutierrez were each convicted of conspiracy to distribute cocaine and crack cocaine (Count I). Gutierrez was also convicted of possession with intent to distribute cocaine on December 10, 1990 (Count IV), and on February 15, 1991 (Count VI). He was acquitted of possession with intent to distribute cocaine on December 14, 1990 (Count V). The district court gave Gutierrez concurrent sentences of life on Count I, forty years on Count IV, and twenty years on Count VI. Coleman was sentenced to a prison term of 188 months on Count I.
 
 II.
 
 4
 Both Gutierrez and Coleman challenge the admission of certain hearsay evidence during Terrell's testimony. In order for this evidence to be admissible as an exception to the prohibition against hearsay, the Government was required to show by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the statements were made by a co-conspirator during the course of the conspiracy; and (3) that the statements were made in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E); see United States v. Jackson, 863 F.2d 1168, 1171 (4th Cir. 1989).
 
 
 5
 Gutierrez challenges the introduction of Terrell's testimony that Bell told her Gutierrez was his supplier, as well as the admission of tape-recorded conversations between Terrell and Bell during which Bell referred to Gutierrez as his supplier. Coleman also challenges the admission of statements Bell made to Terrell during the tape-recorded conversations in which Bell responds to Terrell's questions about Coleman and makes references to Coleman's involvement with drugs. Gutierrez and Coleman contend that there was insufficient evidence of a conspiracy between them and Bell to justify the admission of this evidence under Rule 801(d)(2)(E).
 
 
 6
 Our review of the record indicates that the Government introduced sufficient proof of a conspiracy between Gutierrez and Bell to warrant admission of the statements regarding Gutierrez. For example, Terrell testified that Bell took her to Gutierrez's house to arrange the purchase of several kilograms of cocaine. Terrell also went with Bell to find two ounces of cocaine that Gutierrez had left for them. Other witnesses, including Angelo Coker, Timothy Coker, and Shorty Palmer testified that Gutierrez was Bell's source of cocaine. In addition, Government informant Johnny Dixon testified that he had been dealing cocaine for Gutierrez for approximately 10 to 13 years and Dixon tape-recorded conversations during his purchase of two ounces of cocaine from Gutierrez.
 
 
 7
 The Government also introduced sufficient evidence showing Coleman's involvement in the conspiracy. Coleman was tied into the conspiracy through the testimony of Terrell that she had seen him around drugs and he would come to her house with Bell to pick up drugs; Angelo and Tim Coker, who testified that they had sold drugs to Coleman; Shorty Palmer, who testified that he had purchased crack cocaine from Coleman several times; and Larry Smith, who testified that he had made purchases of cocaine from Coleman. Although the Government introduced some of the foundational evidence for both Gutierrez and Coleman after the tapes were admitted, the district court's reliance upon the Government's forecast that the next witnesses would connect them with the conspiracy was appropriate. See United States v. Blevins, 960 F.2d 1252, 1256 (4th Cir. 1992) (a trial court may conditionally admit a co-conspirator's statements subject to subsequent satisfaction of the requirements of admission).
 
 
 8
 Gutierrez and Coleman further contend that even if there were sufficient evidence of a conspiracy, the Government made no showing that the statements Bell made about them were in furtherance of the conspiracy. They assert that the district court committed reversible error by admitting these statements without requiring the Government to lay the predicate foundation. The district court admitted the coconspirator's statements and then gave a cautionary instruction to the jury. This cautionary instruction directed the jury to disregard the statements if the Government had not shown beyond a reasonable doubt that Gutierrez or Coleman were part of a conspiracy, or that the statements made by Bell to Terrell were in furtherance of the conspiracy. Both Gutierrez and Coleman assert that in giving this cautionary instruction to the jury, the district court improperly abdicated to the jury the responsibility of determining the admissibility of the evidence.
 
 
 9
 Admissibility under Rule 801(d)(2)(E) is a question of law to be determined by the district court on the basis of whether the evidence that the Government proffers constitutes "prima facie proof of the conspiracy." United States v. Spoone, 741 F.2d 680, 686 n.1 (4th Cir. 1984) (quoting United States v. Vaught, 485 F.2d 320, 323 (4th Cir. 1973)). It is the obligation of the district court, not the jury, to determine whether a preponderance of the evidence indicates that the hearsay statements were in furtherance of the conspiracy. See Jackson, 863 F.2d at 1171 (preliminary factual questions concerning admissibility of evidence under Rule 801(d)(2)(E) must be determined by the court) (citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)). This Circuit does not, however, require a formal hearing to determine the existence of a conspiracy before statements may be admitted under Rule 801(d)(2)(E). United States v. Hines, 717 F.2d 1481, 1488 (4th Cir. 1983), cert. denied, 467 U.S. 1214, and cert. denied, 467 U.S. 1219 (1984). Neither is a district court required to set out on the record its reasons for this evidentiary ruling,"although it may be advisable for the trial court to do so in order for an appellate court to more easily assess the basis of the ruling." Blevins, 960 F.2d at 1256.
 
 
 10
 The record in this case does not indicate the district court's basis for determining that the statements made by Bell about Gutierrez or Coleman were in furtherance of the conspiracy. Nevertheless, we may affirm the judgment where the record in its entirety demonstrates that the co-conspirator's statements were plainly admissible. Id. Similarly, even if the district court technically erred in allowing the jury to determine whether Bell's statements to Terrell were admissible, if our independent review of the record establishes that the statements were in fact admissible, the error is harmless. Spoone, 741 F.2d at 686 n.1.
 
 
 11
 It is clear from the record that the statements made by Bell about Gutierrez were in furtherance of the conspiracy. The tape recorded statements were incident to several drug transactions taking place between the co-conspirators. The conversations demonstrate that Bell was trying to develop Terrell as a long-term drug contact. To do that he needed to describe his involvement with Gutierrez and Coleman. Bell's statements served to persuade Terrell that he had good quality cocaine and to let Terrell know who the partners in the conspiracy were and their respective roles. These statements were in furtherance of the conspiracy, and it was appropriate for the district court to admit them. See United States v. Johnson, 925 F.2d 1115, 1117 (8th Cir. 1991) (conversations which identified participants in narcotics conspiracy, discussed roles in distribution conspiracy, and mentioned details of actual distribution process were admissible as hearsay statements made by coconspirator in furtherance of conspiracy).
 
 
 12
 Although it is not as clear that the hearsay statements about Coleman on the tape-recordings were in furtherance of the conspiracy, we need not dwell on this issue. The substantial independent evidence of Coleman's participation in the conspiracy makes any error in admitting these statements harmless. For example, Terrell testified that she had seen Coleman around drugs and that he would come to her house with Mike Bell to pick up drugs. Angelo and Tim Coker both testified that they had seen Coleman with Bell when drugs were being sold and that they had sold drugs to Coleman. Shorty Palmer testified that Coleman came with Bell when he came to buy drugs, that Coleman would hold the drugs for Bell, that Coleman had sold him crack cocaine several times, and that Coleman used to come to his house to buy drugs. Larry Smith testified that he had purchased cocaine from Coleman. In view of this overwhelming evidence of Coleman's guilt, any error in admitting the challenged hearsay statements was harmless.
 
 III.
 
 13
 Gutierrez makes several additional arguments. First, he contends that the evidence was insufficient to support his conviction for conspiracy. Second, he challenges his sentence on the ground that the Sentencing Guidelines are arbitrary and capricious and therefore violate the Administrative Procedures Act (APA), 5 U.S.C.A. §§ 551-59, 701-706 (West 1977 & Supp. 1993). Finally he contends that there was no credible evidence to support enhancement of his sentence for the amount of cocaine involved, United States Sentencing Commission, Guidelines Manual, § 2D1.1(a)(3); for possession of firearms, Id. § 2D1.1(b)(1) (Nov. 1991); or for his role as an organizer or leader, Id. § 3B1.1(a).
 
 
 14
 Gutierrez's argument regarding the sufficiency of the evidence is without merit. As the above testimony regarding Gutierrez indicates, there was more than sufficient evidence for a rational jury to have found the essential elements of a conspiracy beyond a reasonable doubt. Gutierrez's argument regarding the APA is similarly without merit. The only provisions of the APA applicable to the Sentencing Commission are the notice and comment requirements, 5 U.S.C. § 553 (1988), and the Commission has adequately complied with these provisions. 28 U.S.C. 994(x) (1988).
 
 
 15
 In making its factual findings for sentencing, the district court adopted the conclusions of the presentence report holding Gutierrez responsible for twenty kilograms of cocaine and five kilograms of crack cocaine, noting his possession of firearms where drugs were being dealt, and pointing out his leadership role as manager of the conspiracy. The district court's findings of fact must be accepted unless clearly erroneous, and we must give due deference to the district court's application of the Guidelines to the facts. United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir. 1989); 18 U.S.C. § 3742(d) (1988). In this case, the district court's factual findings in sentencing were not clearly erroneous.
 
 III.
 
 16
 For the foregoing reasons, we affirm the convictions of Bobby Coleman and Jose Gutierrez and Gutierrez's sentences.
 
 AFFIRMED