GREGORY, Circuit Judge, concurring in part and dissenting in part.
I respectfully dissent from the majority’s decision to affirm the drug conspiracy conviction against Larry Allen Aikens (“Larry Aikens”), as set forth in Section IIA.1. The Government admits that Larry Aikens was only charged with a plantation *227 conspiracy to manufacture and possess with intent to distribute 100 marijuana plants cultivated in the Pisgah National Forest (“Forest”).[1] Yet the record fails to show any evidence, direct or circumstantial, supporting the existence of an agreement between Larry Aikens and Lewis Darrell Aikens (“Lewis Aikens”) regarding the cultivation of marijuana in the Forest. Because, in my view, the drug conspiracy conviction impermissibly relies on numerous inferential leaps and conflates several uncharged conspiracy theories, the conviction cannot stand. For this reason, I also do not view the sentencing errors as harmless and therefore dissent from Section IIB. I otherwise concur in the majority’s conclusion in Section IIA.2 to vacate the firearms conviction.
I.
On September 3, 2003, United States Forest Service officers discovered three marijuana cultivation sites located in the Forest in the western region of North Carolina. Officer Claude Wilton Stribling noted that the sites had similar sizes, terraces, and cultivation techniques; they were also linked by a faint trail. On September 10, 2003, Officer Stribling further observed that four-wheeler tracks led from a trail called the Hickory Log Branch (“Hickory Log Branch trail”) to a point within 300 yards of the marijuana cultivation sites.
On October 5, 2003, four officers (in teams of two) entered the area of the marijuana cultivation sites at approximately 11:00 a.m. that morning. Agent Harold Young, Jr. radioed to Officer Stribling and Agent Jenny Davis that he had “flushed somebody or someone, a bear, or either someone.” J.A. 151. Agent Young radioed again to inform the officers that “he had found a human boot print, and he thought that what he had flushed was possibly human activity.” Id. There was no indication that more than one person had been flushed out.
Officer Stribling and Agent Davis approached the uppermost 50-plant cultivation site and noticed that it had been freshly harvested since their prior visit. Upon discovering two distinct sets of footprints, Officer Stribling began to track them from the site down to a fourth, undiscovered marijuana cultivation site, which appeared consistent with the three other sites. While surveying the scene, Officer Stribling noticed a red Honda all-terrain vehicle (“ATV”) abandoned nearby as well as fresh four-wheeler tracks. He testified that the “the trimming had been done, it looked like, that day.” J.A. 50. The tracks led down the Hickory Log Branch trail and appeared to have originated from Larry Aikens’s house.
Meanwhile, the other officers decided to investigate the area from which Agent Young had apparently “flushed” out human activity. They headed up the trail towards the uppermost cultivation sites and found four duffel bags filled with freshly harvested marijuana. One of the bags was labeled “Aikens, Lewis D.” with his Social Security number. The officers then set up surveillance near the ATV.
By 9:00 a.m. the next morning, Officer Michael Tipton was by himself continuing surveillance near the ATV. Officer Tipton saw Larry Aikens and Lewis Aikens approach the ATV. One of them said to the other, “What do you think?” J.A. 255. The other one responded, “I don’t see them. Let’s go on up the trail.” J.A. 256, 276. Larry Aikens walked upward on the trail, while Lewis Aikens remained behind, *228 inspecting the ATV. Both Larry Aikens and Lewis Aikens then walked over to where Agent Larry Fisher was positioned. Upon the arrival of Agent Davis and other officers at that location, the officers handcuffed and searched both men. The officers discovered an ATV key in Lewis Aikens’s pocket and an ATV key in Larry Aikens’s pocket.
Lewis Aikens told Officer Tipton that the ATV did not belong to him. Similarly, Larry Aikens denied that the ATV belonged to him. Larry Aikens also told Agent Davis that they were just walking, a story which Lewis Aikens repeated. While the officers were leading both men out of the area on the trail, Larry Aikens struck up a conversation about bear hunting. At the same time, Officer Fisher was able to match Lewis Aikens’s key with the ATV; Larry Aikens’s key did not fit. Moreover, the officers seized the boots of both Aikenses and later compared the samples to a plaster cast of a bootprint found near the ATV; Agent Davis did not send the boots of Larry Aikens for further analysis because she believed that they did not match the bootprint.
On October 7, 2003, the officers obtained search warrants for the residences of Larry Aikens and Lewis Aikens. The officers noted that most of the evidence “was located in [Larry Aikens’s] garage or in abandoned vehicles or in sealed barrels hidden behind his residence or hidden behind the still that we located.” J.A. 171. In the woods above Larry Aikens’s house, the officers found a black barrel filled with five white plastic bags containing marijuana, one black bag containing marijuana, a triple-beam scale with marijuana residue on it, and numerous plastic baggies. Immediately adjacent to the black barrel was a 55-gallon blue barrel filled with eight plastic bags of marijuana. Inside a main garage area, officers also found a gray backpack containing a set of triple-beam scales, baggies, digital scales and a .25 caliber handgun. There were no fingerprints on any of the scales. Although the marijuana found on Larry Aikens’s property was sent to a laboratory for analysis, the examining chemist could not determine whether the marijuana matched the marijuana plants found in the Forest. Moreover, other people — including Lewis Aikens — had access to Larry Aikens’s property.
With respect to Lewis Aikens’s property, the officers discovered an electronic scale, camouflage nets, and planting trays in his home. The officers also found marijuana seeds, fertilizer, various firearms, and medical rolling tape identical to the type used on the marijuana plants in a nearby shed.
II.
The Government and the majority admit that “[b]oth Larry’s and Lewis’s drug offenses were alleged to have involved the same marijuana plants, and to have occurred between approximately July 2003 and October 6, 2003.” (Op. at 3 (emphasis added).)[2] However, there was insufficient evidence to sustain Larry Aikens’s conspiracy conviction with respect to the marijuana plants cultivated in the Forest.
A.
In assessing the sufficiency of evidence, we must determine whether the jury ver *229 diet is sustained by “substantial evidence, taking the view most favorable to the Government,” to support it. United States v. Pierce, 409 F.3d 228, 231 (4th Cir.2005) (quoting Glosser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942)). Specifically, “substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant’s guilt beyond a reasonable doubt.” United States v. Burgos, 94 F.3d 849, 862 (4th Cir.1996) (en banc). In effect, a reviewing court may not “overturn a substantially supported verdict merely because it finds the verdict unpalatable or determines that another, reasonable verdict would be preferable.” Id. Moreover, the jury, not the reviewing court, “weighs the credibility of the evidence and resolves any conflicts in the evidence presented,” id., to the extent that “we assume that the jury resolved all contradictions in the testimony in favor of the Government.” United States v. Sun, 278 F.3d 302, 313 (4th Cir.2002) (citing United States v. Romer, 148 F.3d 359, 364 (4th Cir.1998)). Nevertheless, a conviction “must be overturned if ‘the evidence here could only lead to a finding of guilt by an unacceptable process of raw speculation rather than by a reasoned process of inferring guilt beyond a reasonable doubt.”’ United States v. Baker, 985 F.2d 1248, 1251 (4th Cir.1993) (quoting United States v. Giunta, 925 F.2d 758, 766 (4th Cir. 1991)).
B.
To establish a drug conspiracy under Count One, the Government was required to prove the following elements beyond a reasonable doubt: “(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators.” United States v. Stewart, 256 F.3d 231, 250 (4th Cir.2001) (citing United States v. Heckard, 238 F.3d 1222, 1229 (10th Cir.2001)). The “ ‘gravamen of the crime of conspiracy is an agreement to effectuate a criminal act.’” Burgos, 94 F.3d at 857 (quoting United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir.), cert. denied, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980)). A conspiracy is, by its nature, “clandestine and covert, thereby frequently resulting in little direct evidence of such an agreement.” Id. (internal citations omitted). As such, a conspiracy may be “proved wholly by circumstantial evidence,” such as the defendant’s “ ‘relationship with other members of the conspiracy, the length of this association, [the defendant’s] attitude [and] conduct, and the nature of the conspiracy.’ ” Id. at 858 (quoting United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir.), cert. denied, 469 U.S. 1105,105 S.Ct. 777, 83 L.Ed.2d 773 (1985)).
I disagree that any evidence, direct or circumstantial, sustains the theory that Larry Aikens and Lewis Aikens entered into a criminal enterprise with respect to the marijuana plantation. The Government asserts that the major links in the conspiracy — e.g., the ATV tracks leading from Larry Aikens’s house to the area near the marijuana cultivation sites and the appearance of the Aikenses at the ATV — support the existence of an unlawful agreement between Larry Aikens and Lewis Aikens. The majority proceeds further, speculating that Larry Aikens permitted Lewis Aikens to cross his property to access the Hickory Log Branch trail, which led to the marijuana cultivation sites, and that Larry Aikens accompanied Lewis Aikens to retrieve the duffel bags of marijuana harvested the previous day. However, there was no evidence supporting the inference that Larry Aikens was aware that Lewis Aikens had used his *230 property to cross the Hickory Log Branch trail, much less that he had given him permission to do so for the purpose of reaching the marijuana cultivation sites. As the Government concedes, only one set of ATV tracks, which had been freshly formed the day prior to the Aikenses’ arrest, appeared on the trail.
Nor was there any evidence indicating that Larry Aikens knew that Lewis Aikens intended to retrieve the duffel bags of marijuana on the day of their arrest. When the two men reached the ATV, one of them said to the other, “What do you think?” The other one responded, “I don’t see them. Let’s go on up the trail.” Lewis Aikens continued to examine the ATV, while his father began walking up the trail. The remarks exchanged between Larry Aikens and his son are innocuous and hardly establish that they were on the lookout for officers, as the majority concludes. Indeed, for this conversation to hold any probative significance, the jury must first speculate that: (1) Agent Young had flushed out a human being, specifically, Lewis Aikens, on October 5, 2003; (2) Larry Aikens was aware that Lewis Aikens had been flushed out the previous day by Forest Service officers; and (3) Larry Aikens knew that marijuana cultivation sites were hidden up above the steep hill in the Forest.
These analytical leaps amount to nothing more than inferences piled upon inferences; no unifying theory logically connects these inferences together through a “reasoned process of inferring guilt beyond a reasonable doubt.” Baker, 985 F.2d at 1251 (internal quotations and citations omitted). Indeed, the Aikenses’ conduct following this conversation does not support the Government’s assertion that they were attempting to retrieve the discarded duffel bags. Consistent with their theory that they were walking and bear sighting, Larry Aikens and Lewis Aikens continued to walk up the trail, rather than up the hill where the duffel bags and marijuana cultivation sites were located. Even if the jury could have inferred that Larry Aikens was walking toward the duffel bags, this fact does nothing more than establish that Larry Aikens was present at the scene of the crime. But, as this Circuit has stated previously, mere presence at the scene of the crime is insufficient to establish criminal liability. See United States v. Spoone, 741 F.2d 680, 686 (4th Cir.1984). In effect, the evidence did not permit the jury to make any meaningful connection between the ATV tracks, the two Aikenses’ conduct at the ATV, and the marijuana cultivation sites in the Forest. Moreover, the Government failed to adduce evidence supporting the rational conclusion that Larry Aikens and Lewis Aikens entered into an unlawful agreement •with respect to the marijuana plantation scheme, a point that is surely emphasized by the fact that Lewis Aikens was never charged with conspiracy.
I further disagree with the majority’s conclusion that the evidence was sufficient to establish that Larry Aikens had knowledge of the marijuana plantation conspiracy or that he knowingly and voluntarily participated in the conspiracy. First, the majority identifies the following statements made by Larry Aikens after his arrest: (1) his “false” denial that he did not own or abandon the ATV and (2) his “contradictory” excuses as to why they had been in the Forest. Op. at 14. However, Larry Aikens’s claim that the ATV did not belong to him was a true statement; he said nothing else with respect to the nature of his son’s ownership of the vehicle. Similarly, Larry Aikens’s statements that he and his son were “just walking” and later, that they were walking and tracking bears are not necessarily contradictory to the extent that they establish his criminal *231 knowledge of any marijuana plantation scheme.
Second, the majority’s conclusion that Larry Aikens must have known that he was engaged in his son’s marijuana plantation scheme based on his experience as a marijuana dealer is tenuous at best. As an initial matter, the evidence does not establish that Larry Aikens was aware of the marijuana, scales, and distribution devices, since they were all found in sealed containers, hidden in abandoned vehicles and areas outside his residence where access was open to other people such as renters who entered his property. Even assuming that Larry Aikens was a marijuana dealer, the Government failed to present any evidence which would have enabled Larry Aikens to recognize the marijuana plantation scheme, much less participate in it. I simply do not believe a jury could rationally conclude that Larry Aikens — or any other marijuana dealer, for that matter — could have recognized that a marijuana plantation scheme was occurring based what Lewis Aikens did and said to him on the day of their arrest or the ATV tracks. What Lewis Aikens might have done or said in the presence of Larry Aikens with respect to the marijuana cultivation sites is rank speculation.
Finally, the Government’s case appears to conflate evidence of the marijuana plantation conspiracy, the offense actually charged, with evidence of manufacturing and possessing with intent to distribute marijuana, the offenses that could have been charged. Simply because Larry Aikens may have been a marijuana dealer does not mean that he engaged in every marijuana scheme that came his way. The Government concedes that there was no evidence connecting the marijuana found
on Larry Aikens’s property to Lewis Aikens or the marijuana cultivation sites in the forest.[3] Significantly, the Superseding Indictment did not charge Larry Aikens with manufacturing or possessing marijuana. Yet his conspiracy conviction appears to rest on the officers’ discovery of marijuana at Larry Aikens’s property, despite the fact that none of it related to the marijuana plantation scheme charged. Although Larry Aikens might be guilty of the distinct offenses of manufacturing or possessing with intent to distribute marijuana, a defendant cannot be “tried on charges that are not made in the indictment against him.” United States v. Floresca, 38 F.3d 706, 711 (4th Cir.1994) (en banc) (internal quotations and citations omitted) (“[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him.”). Nor can the Superseding Indictment be stretched to cover such uncharged offenses without offending notions of due process. See United States v. Quinn, 359 F.3d 666, 672-73 (4th Cir.2004) (noting that an indictment is sufficient where it describes the offense using the unambiguous language of the statute and gives a “statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged”) (internal quotations and citations omitted).
After drawing all inferences in favor of the Government, I cannot conclude that “any rational trier of fact could have found the essential elements of [the marijuana plantation conspiracy] beyond a reasonable doubt.” United States v. Collins, 412 F.3d 515, 519 (4th Cir.2005) (internal quotations and citations omitted). At best, the Government’s case rests on tenuous inferences *232 cobbled together by raw speculation. At worst, the Government’s case relies on theories that criminal liability may be predicated on mere association with criminals or criminal propensity. Surely our jurisprudence requires more than conviction based on such conjectures. Otherwise, we effectively eviscerate the “beyond reasonable doubt” standard that the Framers thought prudent to enshrine in our Constitution.
Because I conclude that the marijuana plantation conspiracy was not supported by sufficient probative facts, I therefore respectfully dissent from the majority’s decision to affirm Larry Aikens’s conviction under Count One.
III.
The majority does not address the sentencing errors identified by Larry Aikens, deeming them harmless because the ten-year marijuana plantation conspiracy sentence and 60-month moonshining sentences are to be served concurrently. Since I would reverse the marijuana plantation conspiracy sentence, I do not view the sentencing errors for the moonshining counts as being harmless.
We review a “district court’s interpretation of the applicable sentencing guidelines de novo and its factual findings for clear error.” United States v. Collins, 415 F.3d 304, 315 (4th Cir.2005) (internal quotations and citations omitted). The Presentence Investigation Report set forth an adjusted offense level of 10 for Counts Three and Four and a criminal history category of III. Based on those calculations, the Sentencing Guidelines set forth a range of ten to sixteen months. See U.S.S.G. § 5A. Accordingly, I would vacate and remand to the district court for resentencing in accordance with United States v. Booker, — U.S.-, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and United States v. Hughes, 396 F.3d 374 (4th Cir.2005).

. I use the term "plantation” to encompass any acts related to planting, cultivating, monitoring, and harvesting the marijuana plants in the four cultivation sites located in the Forest.

. Count One of the Superseding Indictment alleged that Lariy Aikens "did knowingly and intentionally combine, conspire, confederate and agree with Lewis Aikens and others, both known and unknown to the Grand Jury, to manufacture and possess with intent to distribute marijuana, a schedule I controlled substance.” J.A. 10. Count One further stated that "[s]aid offense involved more than 100 plants containing a detectable amount of marijuana.” Id.

. Indeed, the Government initially appeared to argue at oral argument that the evidence of marijuana found on Larry Aikens’s property was only admissible based on Rule 404(b) of the Federal Rules of Evidence, as opposed to being admissible as part of its case-in-chief.