**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Harold Fernando Perez MUNOZ,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Virgilio RIVAS–IGLESIAS, Rafael**
**Antonio Jimenez Barros,**
**Defendants-Appellants.**

**Nos. 81–5671, 81–5676.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 6, 1982.

Rehearings Denied Nov. 19, 1982.
See 692 F.2d 116.

---

Michael T. Simpson, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee in both cases.

Terrence T. Dariotis, Tallahassee, Fla., court-appointed, for Munoz.

Before TUTTLE, RONEY and KRAVITCH, Circuit Judges.

TUTTLE, Circuit Judge:

These three appellants were arrested, tried and convicted of conspiring to import marijuana in violation of 21 U.S.C. §§ 952(a) and 963 (the conspiracy statute) and of possession of marijuana knowing that it would be imported in violation of 21 U.S.C. § 955. While the evidence is undisputed that these three persons were on board the vessel Alaskan I, carrying some 46,000 pounds of marijuana for 10 days, when the vessel ended up in a sinking condition 13½ miles off the coast of Florida, their principal contention on appeal is that there was insufficient evidence from which the jury could find that these particular defendants had any knowledge of the existence of a conspiracy to import marijuana into the United States; that at most the proof showed only that they participated with others in an effort to transport marijuana without knowing what its ultimate destination would be.

The government concedes in its brief that "what the government is required to prove under Count II is that an agreement to import marijuana into the United States existed, that each defendant knew of that agreement, and that with that knowledge each defendant voluntarily participated in the agreement."

Here, no one contends that there was not a conspiracy at least on the part of the American captain of the Panamanian flagship and "other persons unknown" to do precisely what section 952(a) forbids. A short statement of the facts which could readily be found by the jury is necessary to demonstrate the manner in which the

James R. Flynn, Flynn & Powers, Tallahassee, Fla., for Rivas-Iglesias.

Roy L. Glass, Deserio & Glass, St. Petersburg, Fla., for Barros.

government contends that it adequately carried its burden.

The Alaskan I was a Panamanian vessel, berthed in Colon, Panama. Its crewmen, which included Rivas, as cook, were shipped on at that port and were given promises of wages of $1,000 apiece in connection with a trip to Colombia to pick up a load of marijuana and to deliver it to a point off the Yucatan peninsular known as Woman's Island. Rivas is the only member of the crew of the vessel whose appeal is now before us. The ship sailed from Panama, arrived off Colombia three days later, where it picked up 46,000 pounds of marijuana from small boats. Appellants Barros and Munoz came aboard with the marijuana, armed with a carbine, which subsequently they both carried from time to time on the ship. They performed none of the duties of seamen or members of the crew. The ship then circled off Cozumel, Mexico, five days later, where the captain obtained instructions which he did not communicate to the crew, but after which he set a course north which would take the ship to the coast of Florida. When he reached the Appalachee Bay area on February 27, 1981, a small power boat with Americans aboard took the American captain from the Alaskan I and the two Colombians, Barros and Munoz, ashore just before the Coast Guard came aboard the vessel to prevent it from sinking. Rivas also was taken off the ship in the small boat. The three were subsequently arrested on shore after the Coast Guard discovered the 23 tons of marijuana on board the vessel. The captain was also arrested as were eight or nine other members of the crew, most of whom were subsequently released.

Since the decision of the Court of Appeals for the Fifth Circuit (Unit B), by which we are bound, in *United States v. Freeman, et al.*, 660 F.2d 1030 (5th Cir. 1981), the burden on the United States to establish the participation by any crew member on a ship heavily laden with marijuana over a period of several days to prove the existence of a conspiracy and participation of each of those persons as a member of the conspiracy is relatively light. In *Freeman*, the Court said:

In *United States v. DeWeese*, 632 F.2d 1267 (5th Cir. 1980), *cert. denied*, 451 U.S. 902, 101 S.Ct. 1967, 68 L.Ed.2d 290 (1981); we relied explicitly on *United States v. Alfrey*, 620 F.2d 551 (5th Cir. 1980), in holding that:

> ... the probable length of the voyage, the large quantity of marijuana on board, and the necessarily close relationship between the captain and his crew were factors from which the jury could reasonably find guilt beyond a reasonable doubt.

*Id.* at 1273; *see United States v. Alfrey*, 620 F.2d 551, 556 (5th Cir. 1980).

Here we have (1) the same lengthy voyage (10 days); (2) the same large quantity of marijuana (41,000 pounds); and (3) the same close relationship between captain and crew inferable from the length of the voyage and the size of the vessel.... In sum, the three *Alfrey-DeWeese* factors alone would be sufficient to establish a *prima facie* case of conspiracy to import.

660 F.2d at 1035 (footnote omitted).

Here, again, we have (1) the same lengthy voyage (10 days) as to two of the appellants and (13 days as to the other); (2) the same large quantity of marijuana (46,000 pounds); and (3) the same close relationship between captain and crew inferable from the length of the voyage and the size of the vessel. Moreover, as to the two Colombians there is evidence that they came on board "in charge" of the shipment of marijuana and it was their duty to protect it while on shipboard, if necessary, by use of the carbine which they carried. Thus, under *Freeman*, it seems clear that whatever conspiracy had been concocted by the owner of the vessel and the captain and whichever others of the crew (not testified to) may have been in on the entire deal the government has established a prima facie case of conspiracy to import. *See also, United States v. Julio-Diaz*, 678 F.2d 1031 (11th Cir., 1982).

There was, of course, additional evidence in the nature of expert testimony to the

effect that Mexico was not a marijuana importing country and that only the United States and Canada would be normal importers. Such testimony was also considered in *Freeman*, 660 F.2d at 1034. There was also evidence that it was obvious to all that the Alaskan I was heading north for the three days after it left the vicinity of Cozumel and that the United States was its obvious destination. There was no evidence that any of these three appellants protested or in any way objected to the then obvious purpose of carrying the cargo of marijuana to the place where it finally ended up, off the coast of Florida.

■ With respect to the appellants' argument that they could not be held guilty of the possession count, the government correctly points out that however menial their tasks were, they were all participating in a conspiracy which involved the possession of the shipload of marijuana. There can be little doubt but that they could be found guilty of aiding and abetting, even if the jury could not find, as we think it may have, that at least Barros and Munoz were directly in possession of the marijuana. Appellant Rivas' participation in the conspiracy as cook for the vessel was one of the essential needs for the operation of the conspiracy. Clearly, it was within the power of the jury to determine that he was an aider and abetter. There is no requirement that the aiding and abetting statute be cited in the indictment for conviction to be obtained upon a theory of aiding and abetting. *United States v. Masson*, 582 F.2d 961 (5th Cir. 1978).

■ The contention made by Barros and Munoz that their sentences to consecutive five year terms of imprisonment and $15,000 fines on counts II and III of the indictment were excessive cannot prevail. The Court of Appeals for the Fifth Circuit has held that so long as sentences are within the statutory maximums, they may not be disturbed upon appeal "in the absence of a clear abuse of discretion." *United States v. Dawson*, 576 F.2d 656 (5th Cir. 1978). The Court has also more narrowly limited the reviewing power of an appellate court of

such sentences to those in which "arbitrary and capricious action amounting to a gross abuse of discretion is involved" or where the sentence imposed is "so greatly disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice." *Wilkerson v. United States*, 591 F.2d 1046, 1048 (5th Cir. 1979); *United States v. Vice*, 562 F.2d 1004, 1005 (5th Cir. 1977).

■ Finally, we conclude that it was not error for the trial court to impose special parole terms under count III of the indictment. This count dealt with violations of 21 U.S.C. § 955a(a), (b). Appellants contend that *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980) makes it improper for the trial court to impose special parole terms to a violater of section 955a(a), (b), simply because section 963 which was before the Supreme Court in *Bifulco* and section 955 are in the same subchapter and they contend that the same reasoning applies. Reference to section 955a(a), (d), however, shows that it has none of the restrictive language contained in section 963, limiting the penalty to imprisonment and/or fine. Section 955a(a), (d), instead, expressly adopts penalties from section 960 without any limitation to fine or imprisonment. Since, under section 960(b)(2), the imposition of a special parole term is mandatory if a term of imprisonment is imposed there can be no error in the imposition of the special parole term here.

The judgment of the trial court is AFFIRMED.