UNITED STATES of America,
Plaintiff-Appellee,

v.

Oscar BENT, Defendant-Appellant.

No. 81–6150
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

April 4, 1983.

Hugh J. Behan, Asst. Federal Public Defender, Miami, Fla. (court appointed), for defendant-appellant.

Eileen M. O'Connor, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, JOHNSON and HATCHETT, Circuit Judges.

JOHNSON, Circuit Judge:

Appellant Oscar Bent, a Colombian juvenile, was arrested by Coast Guard officers in July 1981 on board the "ROBIN", a sixty-foot American shrimp trawler anchored twenty miles south of Cape Romano, Florida. A fishing moratorium was in effect in the waters surrounding the remote Cape Romano area, and the ROBIN did not carry fishing gear or display a flag. It was, however, equipped with sophisticated electronic equipment and it carried 6,520 pounds of marijuana.

Coast Guard officers boarded the ROBIN to determine the vessel's nationality and check its documentation. They found Oscar Bent in the master's quarters, scribbling in a navigational notebook. Beneath the notebook was a chart of the area between Colombia and Cuba. Another chart contained a track line plotting a course around the Yucatan Peninsula and across the Gulf of Mexico to an area off the southern coast of Florida, approximately forty miles from Cape Romano. The track line avoided a portion of the chart labeled "BAD". Testimony at Bent's trial established that the "BAD" area is patrolled by the Coast Guard.

After many bales of marijuana were discovered in the main hold and the eight Colombian crew members were arrested, the boarding party conducted a thorough inspection of the vessel. The crew's quarters were "very well lived in"—little food was left, clothes were scattered everywhere, all the dishes were dirty, and garbage was strewn about. There was marijuana in the living quarters, an ounce of marijuana was on the master's bunk, and a five-pound bag of marijuana was in the closet of the crew's quarters. The afterhold was empty except for marijuana seeds, and marijuana residue was found around the perimeter of the afterhold hatch and on the gunwales of the vessel, indicating a recent off-load of marijuana.

Bent was taken aboard the Coast Guard Cutter "CAPE CURRENT" to Key West, Florida, where it was determined that he was a juvenile. He was then turned over to

immigration officials for exclusion. No charges were filed against him. On September 13, 1981, less than a month and a half after Bent was returned to Colombia, he was found aboard the "LADY NICOLE", a stateless sixty-five-foot shrimper. When the Coast Guard boarded the LADY NICOLE in the Yucatan Straits it was laden with forty thousand pounds of marijuana and was heading north.

On September 24, 1981, the United States Attorney for the Southern District of Florida filed a four-count information against Bent and certified the case to the United States District Court pursuant to 18 U.S.C.A. § 5032. The information charged the appellant with evincing his juvenile delinquency by: (1) conspiring on board the ROBIN, an American vessel, to possess 7,000 pounds of marijuana with intent to distribute, in violation of 21 U.S.C.A. § 955c; (2) possessing 7,000 pounds of marijuana on board the ROBIN, an American vessel, with intent to distribute, in violation of 21 U.S.C.A. § 955a(a); (3) conspiring on board the LADY NICOLE on the high seas to possess 40,000 pounds of marijuana with intent to distribute, in violation of 21 U.S.C.A. § 955c; and (4) possessing 40,000 pounds of marijuana on board the LADY NICOLE on the high seas with intent to distribute, in violation of 21 U.S.C.A. § 955a(a).

The case was scheduled for trial before the Honorable Alcee L. Hastings on Columbus Day, Monday, October 12, 1981. That morning Judge Hastings announced that, due to an investigation by the Federal Bureau of Investigation, he would recuse himself from all pending cases and ask for an immediate reassignment of all cases. Defense counsel did not object. The case was reassigned and the non-jury trial commenced on October 16, 1981. At the conclusion of the government's case the court granted appellant's motion for a judgment of acquittal as to Counts 3 and 4. The court adjudicated Bent a delinquent on Counts 1 and 2. He was sentenced to the custody of the Attorney General for two years pursuant to the Federal Juvenile Delinquency Act, 18 U.S.C.A. §§ 5031–5042.

Bent raises four issues on appeal. He argues that: (1) he was denied his constitutional right to a jury trial; (2) the government failed to comply with the certification requirements of 18 U.S.C.A. § 5032; (3) his right to a speedy trial, under 18 U.S.C.A. § 5036, was violated; and (4) there was insufficient evidence to establish his possession of marijuana or participation in the conspiracy. We resolve all these issues in favor of the United States and affirm the adjudication of delinquency.

## 1. JURY TRIAL

■ Before trial appellant orally filed a motion for a jury trial, which the court denied. The court's denial of this motion was proper. In *United States v. Cuomo*, 525 F.2d 1285, 1292 (5th Cir.1976), the former Fifth Circuit, relying on *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), held that there is no constitutional right to a jury trial in federal juvenile delinquency proceedings. We are bound by the holding in *Cuomo*. *United States v. Daye*, 696 F.2d 1305, 1306 (11th Cir.1983); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc). By adopting the holding in *Cuomo* we join every Court of Appeals that has considered this question. *See United States v. Doe*, 627 F.2d 181, 183 (9th Cir.1980); *United States v. Duboise*, 604 F.2d 648, 652 (10th Cir.1979); *United States v. Hill*, 538 F.2d 1072, 1074–75 (4th Cir.1976); *United States v. Torres*, 500 F.2d 944, 946–48 (2d Cir. 1974); *United States v. Salcido-Medina*, 483 F.2d 162, 164 (9th Cir.), *cert. denied*, 414 U.S. 1070, 94 S.Ct. 582, 38 L.Ed.2d 476 (1973); *United States v. King*, 482 F.2d 454, 456 (6th Cir.), *cert. denied*, 414 U.S. 1076, 94 S.Ct. 594, 38 L.Ed.2d 483 (1973); *Cotton v. United States*, 446 F.2d 107, 110 (8th Cir. 1971).

## 2. CERTIFICATION

■ Section 5032 of 18 U.S.C.A. reads, in pertinent part:

A juvenile alleged to have committed an act of juvenile delinquency shall not

be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to an appropriate district court of the United States that the juvenile court or other appropriate court of a State (1) does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, or (2) does not have available programs and services adequate for the needs of juveniles.

If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State.

Because the State of Florida does not have jurisdiction over the crime involved in this case, which was committed on the high seas, the United States Attorney filed a certification with the District Court for the Southern District of Florida. Appellant argues that 18 U.S.C.A. § 5032 prohibits any government official other than the Attorney General from making the required certification and that the power is not delegable to the United States Attorney.

In *United States v. Cuomo, supra,* 525 F.2d 1285, the former Fifth Circuit determined that the Attorney General has delegated his authority under Section 5032 to the United States Attorney of the District in which an offense occurs [1] and that, under 28 U.S.C.A. § 510, this delegation is valid. *Cuomo, supra,* 525 F.2d at 1287–89. We are bound by this holding. *Bonner, supra,* 661 F.2d 1206.

### 3. SPEEDY TRIAL

Section 5036 of 18 U.S.C.A. provides, in pertinent part:

If an alleged delinquent who is in detention pending trial is not brought to trial within thirty days from the date upon which such detention was begun,

the information shall be dismissed ... unless that additional delay was ... consented to by the juvenile and his counsel, or would be in the interest of justice in the particular case.

Prior to trial, appellant sought dismissal of the information, arguing that he had been in custody in excess of thirty days. He claims that the time he was in custody before his exclusion from the United States should be counted, as should the four-day delay resulting from the reassignment of the case. Both these arguments lack merit. In the three days between Bent's arrest on the ROBIN and his return to Colombia no charges were filed against him. He was not "in detention pending trial" within the meaning of Section 5036. Bent was first detained pursuant to Section 5036 when he was arrested on board the LADY NICOLE on September 13, 1981. Thirty days later, on October 12, 1981, all parties answered "ready for trial" in this case before Judge Hastings. Judge Hastings announced that he was recusing himself, and the case was reassigned for trial four days later. This short delay was clearly "in the interest of justice in the particular case," and therefore is not grounds for dismissing the information.

### 4. SUFFICIENCY OF THE EVIDENCE

Appellant argues that there was insufficient evidence to establish his possession of marijuana or his participation in a conspiracy to distribute marijuana. In evaluating a claim of insufficient evidence this Court must consider the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), resolving reasonable inferences and credibility choices in support of the verdict. *United States v. Henderson,* 588 F.2d 157, 161 (5th Cir.), *cert.*

1. The Attorney General delegated his authority to the Assistant Attorney General in charge of the Criminal Division in Order No. 579–74, 28 C.F.R. § 0.57. The Assistant Attorney General redelegated this authority to the appropriate United States Attorneys by an Order dated October 16, 1974, and published in the Federal Register on October 24, 1974. Contrary to appellant's assertion, the court in *Cuomo* found that this was a general, rather than a specific delegation. *Cuomo, supra,* 525 F.2d at 1289 n. 8. It is therefore unnecessary for the Attorney General to delegate his authority on a case by case basis.

*denied,* 440 U.S. 975, 99 S.Ct. 1544, 59 L.Ed.2d 794 (1979). The standard of review is whether a reasonable minded fact finder could find that the evidence established guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (11th Cir. 1982) (en banc), *cert. granted on other grounds,* —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982).

■ It is relatively easy for the government to establish possession of marijuana or participation in a conspiracy by any crew member of a ship heavily laden with marijuana over a period of several days. *United States v. Munoz,* 681 F.2d 1372, 1374 (11th Cir.1982). In determining constructive possession of marijuana, or the existence of and participation in a conspiracy, this Court considers, *inter alia,* the probable length of the voyage, the quantity of marijuana, and the necessarily close relationship between the captain and his crew. *Id.* The probable length of the ROBIN's voyage was 2–4 days, there were 6,520 pounds of marijuana on board when the vessel was seized, and there were only eight Spanish-speaking crewmen on a sixty-foot boat. Other relevant factors are: the fact that Bent was found crossing out possibly incriminating evidence in a notebook; the chart with an area labeled "BAD"; evidence indicating a recent off-load of marijuana; the lack of fishing gear and the abundance of sophisticated electronic equipment; the presence of marijuana in various areas on the boat, and its lived-in condition. This evidence is more than sufficient to establish that Bent had constructive, if not actual, possession of the marijuana and participated in the conspiracy.

AFFIRMED.