USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1368 UNITED STATES OF AMERICA, Appellee, v. SHANE WELCH, Defendant, Appellant. ____________________ No. 92-1370 UNITED STATES OF AMERICA, Appellee, v. CHRISTOPHER DRIESSE, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Shane Devine, U.S. District Judge] ___________________ ____________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ____________________ Paul J. Haley, with whom Scott L. Hood and The Law Office of Paul _____________ _____________ ______________________ J. Haley, P.A. were on brief for appellant Shane Welch. John P. Rab ______________ ___________ for appellant Christopher Driesse. Terry L. Ollila, Special Assistant United States Attorney, with _______________ whom Peter E. Papps, United States Attorney, was on brief for ________________ appellee. ____________________ December 30, 1993 ____________________ 2 CYR, Circuit Judge. This opinion addresses the sepa- CYR, Circuit Judge. _____________ rate appeals of Christopher Driesse and Shane Welch, two youthful defendants who were convicted of conspiring with their ten adult codefendants to possess and distribute cocaine, see 21 U.S.C. ___ 846 (1988), as part of a New Hampshire drug distribution ring led by David Sepulveda during the period 1985-90. See United States ___ _____________ v. Sepulveda, No. 92-1362 (1st Cir. Dec. 20, 1993) [___ F.3d ___ _________ (1st Cir. 1993)] (affirming convictions of ten codefendants);1 see also United States v. Sepulveda, No. 92-1258 (1st Cir. Dec. ___ ____ ______________ _________ 30, 1993) [___ F.3d ___ (1st Cir. 1993)] (affirming denial of post-trial motion for dismissal or new trial based on newly discovered evidence). These appeals are accorded separate treatment primarily because Driesse and Welch initiated their participation in the Sepulveda conspiracy prior to their eigh- teenth birthdays. Although both came of age while their involve- ment in the criminal alliance continued, appellants contend that the district court lacked jurisdiction and deprived them of their rights under the Federal Juvenile Delinquency Act, 18 U.S.C. 5031-5042 (1988 & Supp. 1992) (FJDA). I. Appellants' Common Claims Under FJDA. I. Appellants' Common Claims Under FJDA. ____________________________________ Appellants, whose participation in the Sepulveda conspiracy spanned their eighteenth birthdays, challenge their ____________________ 1We refer the reader to the main Sepulveda decision for _________ factual detail not directly relevant to these separate appeals. See Sepulveda, No. 92-1362 [___ F.3d ___]. ___ _________ 3 convictions on the grounds that the district court failed to comply with the FJDA by refusing to: (1) conduct a pretrial evidentiary hearing to determine its jurisdiction to try appel- lants as adults; (2) sever their trial from their ten codefen- dants; (3) instruct the jury that conduct prior to their eigh- teenth birthdays ("pre-majority conduct") could not evidence their guilt; and (4) grant their motion to dismiss, based on insufficient evidence of their post-majority participation in the conspiracy.2 A. Pretrial Hearing on Jurisdiction. A. Pretrial Hearing on Jurisdiction. ________________________________ Appellants first maintain that the FJDA divested the district court of jurisdiction to try them as adults unless some of their conspiratorial conduct occurred after they reached eighteen years of age ("post-majority conduct"). Since appel- lants contested the factual basis for the charge that they participated in the Sepulveda conspiracy after attaining their majority, they insist that the FJDA required a threshold eviden- _________ tiary hearing on their jurisdictional claim before they could be ______ ____ _____ __ subjected to trial as adults.3 We do not agree. _________ __ _____ __ ______ The FJDA defines a "juvenile" as "a person who has not attained his eighteenth birthday, or for the purposes of proceed- __ ____________________ 2Driesse became eighteen on April 6, 1988; Welch on November 20, 1989. 3Apparently satisfied that the allegations of appellants' ___________ post-majority conduct were sufficient to satisfy the FJDA, the ____ district court denied their pretrial motions to dismiss the indictment for lack of jurisdiction, as well as their requests for a pretrial evidentiary hearing. 4 ings and disposition under this chapter for an alleged act of _______ ___ __ juvenile delinquency, a person who has not attained his twenty- ________ ___________ first birthday . . . ." 18 U.S.C. 5031 (emphasis added).4 Both Welch and Driesse were between ages eighteen and twenty-one at the time of their indictment. "Juvenile delinquency" is defined as "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have _____ __ ___ __________ ________ been a crime if committed by an adult." Id. (emphasis added). ___ Thus, the FJDA does not apply to "a defendant who . . . is not a juvenile and who has not committed an act of juvenile delinquen- cy." United States v. Doerr, 886 F.2d 944, 969 (7th Cir. 1989). _____________ _____ Generally speaking, it is readily apparent whether a non-continuing substantive violation was committed prior to or after the alleged offender's eighteenth birthday. See United ___ ______ States v. Cruz, 805 F.2d 1464, 1477 n.15 (11th Cir. 1986), cert. ______ ____ _____ denied, 481 U.S. 100, and cert. denied, 482 U.S. 930 (1987). On ______ ___ _____ ______ the other hand, a criminal conspiracy often a continuing offense may persist long past its commencement, sometimes ____________________ 4The FJDA's remedial scheme focuses primarily on the cir- cumstances of the alleged offender, particularly the offender's current prospects for rehabilitation outside the adult criminal _______ justice system, and only secondarily on the offender's age at the time of the alleged offense. Accordingly, even conduct that occurred entirely before age eighteen has been held not wholly exempt from adult criminal prosecution. See United States v. ___ ______________ Hoo, 825 F.2d 667, 670 (2d Cir. 1987) (accused indicted after ___ twenty-first birthday is criminally liable, as an adult, for illegal conduct committed entirely before age eighteen), cert. ________ ______ _____ denied, 484 U.S. 1035 (1988); In re Martin, 788 F.2d 696, 697-98 ______ ____________ (11th Cir.) (same), cert. denied, 478 U.S. 1009 (1986). Of _____ ______ course, given that Welch and Driesse were under age twenty-one at indictment, this precise issue is not before us. 5 spanning the eighteenth birthday of an alleged conspirator. See ___ United States v. Gjonaj, 861 F.2d 143, 144 (6th Cir. 1988); see _____________ ______ ___ also United States v. Giry, 818 F.2d 120, 135 (1st Cir.), cert. ____ ______________ ____ _____ denied, 484 U.S. 855 (1987).5 ______ The government asserts that the FJDA is inapplicable to appellants simply because the indictment charged that the con- _______ spiracy spanned their eighteenth birthdays. Appellants counter that the FJDA's applicability in a conspiracy case ought not depend conclusively on bare allegations as to the time period spanned by the conspiracy or the defendant's membership in it. On balance, however, we find the allegation-based approach to FJDA applicability more consonant with its language and struc- ture, its legislative history, the case law, and important policy considerations. Prosecutorial discretion is a hallmark of the criminal justice system. See Wayte v. United States, 470 U.S. 598, 607 ___ _____ ______________ (1985) ("[T]he decision whether or not to prosecute, and what charges to file or bring before a grand jury, generally rests ____________________ 5The term "alleged act," as used in 5031, means the alleged offense, not each separate act comprising the offense. Thus, the FJDA cannot be read to preclude an adult conspiracy prosecution simply because the accused's participation in the conspiracy began while he was under age eighteen or in other _____ words, because he committed an "act" in furtherance of the conspiracy prior to age eighteen which might be viewed indepen- dently as an "act of juvenile delinquency." See, e.g., Cruz, 805 ___ ____ ____ F.2d at 1475 (citing United States v. Spoone, 741 F.2d 680, 687 _____________ ______ (4th Cir. 1984)). Otherwise, defendants age 18-21 would be insulated from criminal prosecution simply because they got an early start. Neither does the FJDA make the defendant's age at the time of the offense a substantive "element" of every criminal offense. See United States v. Frasquillo-Zomosa, 626 F.2d 99, ___ _____________ _________________ 101 (9th Cir.), cert. denied, 449 U.S. 987 (1980). _____ ______ 6 entirely in [the prosecutor's] discretion.") (quoting Borden- _______ kircher v. United States, 434 U.S. 357, 364 (1978)). Notwith- _______ _____________ standing several amendments expanding the role of the courts, the FJDA continues to impart considerable prosecutorial discretion as to whether an accused will be tried as an adult even though the criminal conduct charged qualifies as an act of juvenile delin- quency.6 For example, pursuant to 18 U.S.C. 5032 the govern- ment may bring a motion to transfer a juvenile defendant to the district court for trial as an adult if the juvenile is at least fifteen years of age and the government alleges that the juvenile committed certain enumerated "transferable" offenses (e.g., ____ violent crimes or controlled substance violations). Although "transfer" is subject to an "interest of justice" test as well, the district court nonetheless may assume, without receiving evidence, that the government's factual allegations relating to the character of the offense are true. See In re Sealed Case, ___ __________________ 893 F.2d 363, 369 (D.C. Cir. 1990); United States v. Doe, 871 _____________ ___ ____________________ 6Enacted in 1938, the FJDA originally provided absolute discretion to the Attorney General to try juvenile offenders as adults. See 18 U.S.C. 921 (1940); see also United States v. ___ ___ ____ ______________ Quinones, 516 F.2d 1309, 1311 (1st Cir.) (per curiam) (finding no ________ due process right to judicial hearing prior to adult trial), cert. denied, 423 U.S. 852 (1975). In order to "incorporate the _____ ______ rehabilitative concept of a juvenile proceeding," S. Rep. No. 1011, 93d Cong., 2d Sess. 48 (1974), reprinted in 1974 U.S.C.- ____________ C.A.N. 5283, 5312, thereby minimizing the involvement of young offenders in the juvenile and criminal justice systems, id. at ___ 5285, in 1974 Congress substantially amended the FJDA, see Pub. ___ L. No. 93-415, 88 Stat. 1109, 1133-38 (1974) (codified as amended at 18 U.S.C. 5031-42), permitting adult trials of juveniles only after a judicial hearing and determination that "transfer" for trial as an adult would serve the interests of justice. Pub. L. No. 93-415, Title V, Part A, 502, 88 Stat. at 1134 (codified as amended at 18 U.S.C. 5032). 7 F.2d 1248, 1250 n.1 (5th Cir.), cert. denied, 493 U.S. 917 _____ ______ (1989). Yet more to the point, section 5032 permits the govern- ment to implement again, on mere allegation, without prior hearing or judicial authorization the mandatory "transfer" of a recidivist juvenile offender for trial as an adult. See Pub. __________ ___ L. No. 98-473, Title II, ch. XII, Part A, 1201, 98 Stat. 1837, 2149-50 (1988).7 Given the breadth of Congress's consignment of other "jurisdictional" determinations to the prosecutor's discre- tion under the FJDA, it is not surprising that appellants cite no case law directly supporting their asserted right to a pretrial evidentiary hearing on the district court's jurisdiction to try them as adults.8 ____________________ 7It might be argued that the language of 5032 is ambiguous on the necessity for a district court hearing prior to the mandatory "transfer" of a recidivist juvenile. See 18 U.S.C. ___ 5032 (connector term "however" follows provision for "interests of justice" transfer, which requires hearing, but precedes recidivism provision, which is silent as to hearing requirement). Nevertheless, the legislative history makes clear that the recidivism provision was intended as an absolute exception to the hearing requirement. S. Rep. No. 225, 98th Cong., 1st Sess. 390- 91 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3530-31 (recidi- ____________ vism transfer "mandatory" "upon motion of the government"). 8Appellants rely primarily on Cruz, 805 F.2d 1464, where the ____ Eleventh Circuit noted that, "once sufficient evidence has been ____ introduced that would allow a jury to reasonably conclude that the defendant's participation in a conspiracy continued after his eighteenth birthday, then he may be tried as an adult." Id. at ___ 1476 (emphasis added). Appellants interpret the word "once" as indicating a temporal requirement that the government submit ________ sufficient proof of post-majority participation before it can ______ subject them to trial as adults. However, the context makes clear that the Cruz court was simply evaluating the jurisdic- ____ tional issue in light of the sufficiency of the evidence present- ed at trial, and that it was addressing the threshold require- __ _____ ments for admitting evidence of pre-majority conduct in support of defendant's conviction as an adult, not for purposes of establishing jurisdiction to try defendants as adults. Id. at ____________ __ ___ ___ 8 Our interpretation comports with three basic policy concerns as well. First, neither appellant was unfairly preju- diced by the district court's decision to defer its determination of the applicability of the FJDA until trial. Congress did not amend the FJDA primarily in order to confer greater procedural rights on juveniles than are available to adults, but to assure that the procedural rights afforded juveniles would be augmented _________ to a level comparable to those available to adults. See S. Rep. __________ ___ No. 1011, 93d Cong., 2d Sess. 47-48 (1974), reprinted in 1974 _____________ U.S.C.C.A.N. 5283, 5312 (FJDA simply codifies "safeguards funda- mental to our system of justice," per In re Gault, 387 U.S. 1 ____________ (1967)). In fact, alleged offenders between the ages of eighteen and twenty-one at indictment often receive more procedural ____ protections under the adult criminal justice system than would be available under juvenile process.9 ____________________ 1476-77. Thus, evidence of the defendant's pre-majority conduct was admissible on the ultimate issue of guilt, and not merely to show knowledge of the conspiracy. See infra Pt. I.B. ___ _____ Other cases cited by appellants, relying on Cruz, suffer ____ from the same misfocus and, if anything, suggest that the appro- priate vantage for determining such jurisdictional facts is after all the evidence has been presented at trial. See United States ___ _____________ v. Maddox, 944 F.2d 1223, 1233-34 (6th Cir.) ("evidence was more ______ than sufficient for the jury to conclude . . ."), cert. denied, _____ ______ 112 S. Ct. 400, 610 (1991), and cert. denied, 112 S. Ct. 948, ___ _____ ______ 1219, 1978, 2317 (1992); United States v. Harris, 944 F.2d 784, _____________ ______ 786 (10th Cir. 1991) ("since the government had presented evi- dence from which the jury could infer . . ."), cert. denied, 112 _____ ______ S. Ct. 903 (1992); Gjonaj, 861 F.2d at 143-44 (finding evidence ______ sufficient for judge to sentence defendant as adult after guilty plea). 9For example, a felony charge against an adult presupposes indictment by a grand jury, see U.S. Const. amend. V, while the ___ FJDA permits a prosecutor to level an equivalent charge simply by 9 Second, the proposed pretrial evidentiary hearing would place an unwarranted burden on the prosecution, especially in multi-defendant conspiracy cases where most alleged coconspir- ____________________ information, see 18 U.S.C. 5032. An adult accused has the ___ fundamental right to trial by jury. See U.S. Const. amend. VI; ___ Fed. R. Crim. P. 23. But see 18 U.S.C. 5037 (juvenile verdict ___ ___ by judge); McKeiver v. Pennsylvania, 403 U.S. 528, 545 (1971) ________ ____________ (finding no constitutional right to jury trial in juvenile proceedings); United States v. Bent, 702 F.2d 210, 212 (11th Cir. _____________ ____ 1983) (applying McKeiver to federal juvenile proceedings). ________ To be sure, the FJDA extends certain pretrial protections not available under the adult criminal justice system, including separate pretrial incarceration at juvenile facilities, see 18 ___ U.S.C. 5033, 5035, and a ban on pretrial publicity relating to the offense, see id. 5038(e). Assuming, without deciding, that ___ ___ these protections confer a cognizable "right," see, e.g., In re ___ ____ _____ Sealed Case, 893 F.2d at 366-67 (in 5032 "transfer" proceeding, ___________ denial of separate incarceration or of protection from pretrial publicity is immediately appealable), appellants do not expressly assert deprivation of either of these "rights" as a ground for their jurisdictional challenge. See United States v. Zannino, ___ _____________ _______ 895 F.2d 1, 17 (1st Cir.) (issues raised on appeal, without adequate argumentation, are deemed waived), cert. denied, 494 ____ ______ U.S. 1092 (1990); United States v. Baker, ___ F.3d ___, ___ (9th _____________ _____ Cir. 1993) [1993 U.S. App. LEXIS 27042, at *43 (9th Cir. Oct. 19, 1993)] (juvenile defendant waives challenge to incarceration with adults unless objection raised in district court). Appellants' reticence is perhaps understandable. Driesse was in state custody, hence never subjected to pretrial detention _____ on these federal charges. Welch originally was released on bail, but bail was revoked because he repeatedly violated the conditions of release. Although the district court ordered Welch detained at a "corrections facility" pending trial, neither Welch nor the appellate record describes the place or precise condi- tions of confinement, affording us no basis for assessing whether the FJDA was violated. Finally, whatever plausible argument Welch might have made about any harm attending adult incarcera- tion would be considerably weakened by the intervening bail violation. Moreover, since 5038(e) expressly conditions the ban on pretrial publicity (even for defendants under age eighteen at the time of indictment) on the prosecutor's discretionary decision _____________ not to "transfer," we perceive no principled basis for deeming any attendant publicity sufficient reason for foreclosing prose- cutorial discretion over appellants' "transfer." See 18 U.S.C. ___ 5038(e) ("Unless a juvenile who is taken into custody is prosecuted as an adult . . . . "). 10 ators are adults. Regardless of the precise burden of proof applicable at the pretrial evidentiary hearing, the government would no doubt be expected to present substantial evidence outlining the alleged conspiracy, thereby prematurely "tipping its hand" on trial strategy and the testimony of its witnesses. See 18 U.S.C. 3500(a) (Jencks Act); Fed. R. Crim. P. 16(a)(2). ___ Furthermore, we do not think a pretrial hearing would signi- ficantly enhance the procedural protection of youthful defendants already indicted by a grand jury. Finally, the issue of district court "jurisdiction" in cases implicating the FJDA seems to us sufficiently similar to other fact-bound defenses to tip the balance in favor of a determination by the trial jury. See infra Pt. I.C. Appellants ___ _____ could only be convicted as adults if they "participated" in, or "ratified" the conspiracy, after age eighteen. See United States ___ _____________ v. Maddox, 944 F.2d 1223, 1233 (6th Cir.), cert. denied, 112 S. ______ _____ ______ Ct. 400, 610 (1991), and cert. denied, 112 S. Ct. 948, 1219, ___ _____ ______ 1978, 2317 (1992). A finding of "participation" or "ratifica- tion" ordinarily depends heavily upon (i) common-sense evalua- tions of the youthful defendants' actions viewed in the context of the criminal enterprise and the conduct of their coconspirators and (ii) inferences as to the state of mind of the various actors. See United States v. Lopez-Pena, 912 F.2d ___ _____________ __________ 1536, 1537 (1st Cir. 1989) (conspiracy requires that "the indi- vidual defendant knew of the agreement, had intent to agree, and had intent to commit the substantive offense"), cert. denied, 111 _____ ______ 11 S. Ct. 2886 (1991). These are matters especially suited to jury resolution. See United States v. Piedrahita-Santiago, 931 F.2d ___ _____________ ___________________ 127, 130 (1st Cir. 1991) ("It is the province of the jury, not this court, to determine the credibility of the witnesses."); cf. ___ United States v. Passos-Paternina, 918 F.2d 979, 985 (1st Cir.) ______________ ________________ ("We defer, within reason, to inferences formulated by the jury in light of its collective understanding of human behavior in the circumstances revealed by the evidence."), cert. denied, 111 S. _____ ______ Ct. 1637, 2808-09 (1991).10 Properly instructed in the perfor- mance of their traditional tasks, trial juries can be entrusted to discriminate between pre-majority and post-majority conduct. See, e.g., Cruz, 805 F.2d at 1476. We therefore conclude that ___ ____ ____ the FJDA's language, structure, legislative history, and related policy considerations, militate against requiring a pretrial evidentiary hearing on jurisdiction. ____________________ 10In fact, the FJDA expressly requires very similar eviden- tiary monitoring by the jury once the prosecutor's allegations have led to a youthful defendant's trial as an adult. After a juvenile has been transferred for trial as an adult, whether by transfer hearing or mandatory process, see supra note 6 and ___ _____ accompanying text, unless the jury also convicts the accused of a ________ transferable crime the accused is returned for disposition under the FJDA. See 18 U.S.C. 5032 (listing types of crimes permit- ___ ting "transfer"). Even the FJDA amendments of 1984, which conferred significant "transfer" discretion upon the prosecutor, kept these "return" provisions in place on the theory that jury involvement, after factual corroboration at trial, provides a valuable case-by-case assessment of the appropriateness of juvenile process. See S. Rep. No 225, 98th Cong., 1st Sess. 391 ___ (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3531. ____________ 12 B. Severance. B. Severance. _________ Appellants next contend that the district court commit- ted reversible error by denying their motion for severance, see ___ Fed. R. Crim. P. 14, since (1) the evidence against their ten adult codefendants was so voluminous, in comparison with the meager evidence against appellants, that the jury would indiscriminately lump appellants together with the adults, and (2) the government was entitled to introduce evidence of appel- lants' pre-majority conduct against the adult codefendants, whereas the FJDA prohibits, or severely limits, the admissibility of such evidence against appellants. A motion for severance is committed to the sound discretion of the trial court, and we review only for a manifest abuse of discretion resulting in a miscarriage of justice. See ___ United States v. McLaughlin, 957 F.2d 12, 18 (1st Cir. 1992). In _____________ __________ order to gain severance, a defendant must make a "strong showing [that] substantial prejudice" would result from a joint trial. See United States v. Barnett, 989 F.2d 546, 559 (1st Cir.), cert. ___ _____________ _______ _____ denied, 114 S. Ct. 148 (1993); United States v. Martinez, 922 ______ ______________ ________ F.2d 914, 922 (1st Cir. 1991) (noting that "'prejudice means more than just a better chance of acquittal at a separate trial'") (citation omitted). Appellants have not shown especial preju- dice. The existence of stronger evidence against their codefendants did not entitle appellants to automatic severance on grounds of evidentiary spillover. See United States v. Cresta, ___ ______________ ______ 13 825 F.2d 538, 554-55 (1st Cir. 1987), cert. denied, 486 U.S. 1042 _____ ______ (1988). Nor does the relatively minor conspiratorial role of a particular defendant normally preclude a joint trial with more prominent codefendants. See Martinez, 922 F.2d at 922. Adequate ___ ________ safeguards are available to protect against undue prejudice from evidentiary spillover in most cases. For example, the district court carefully cautioned the jury in the present case to consid- er the evidence against each individual defendant. See Cresta, ___ ______ 825 F.2d at 555. Absent a contrary showing or some evidence of an extraordinary impediment, we will credit the readiness and ability of the trial jury to abide by cautionary and limiting instructions aimed at minimizing the mundane risks of evidentiary spillover. See United States v. Figueroa, 976 F.2d 1446, 1452 ___ _____________ ________ (1st Cir. 1992) (citing United States v. Natanel, 938 F.2d 302, _____________ _______ 308 (1st Cir. 1991), cert. denied, 112 S. Ct. 986 (1992)), cert. _____ ______ _____ denied, 113 S. Ct. 1346 (1993). ______ Next, appellants argue that severance was required because evidence of their pre-majority conduct was admissible against all their codefendants, but not against them. Since prejudicial evidentiary spillover cannot result from evidence directly admissible against all defendants, Figueroa, 976 F.2d at ________ 1452 (citing United States v. Sabatino, 943 F.2d 94, 96 (1st Cir. _____________ ________ 1991)), appellants must establish that evidence of their pre- majority membership and participation in the conspiracy was not directly admissible to support their convictions. Appellants argue, relying on dicta in United States v. _____________ 14 Spoone, 741 F.2d 680, 687-88 (4th Cir. 1984), cert. denied, 469 ______ _____ ______ U.S. 1162 (1985), that use of evidence of pre-majority conduct must be limited as urged by appellants even though cautionary instructions are given. In Spoone, the Fourth Circuit determined ______ that evidence of pre-majority conduct had not formed the sole basis for the defendant's conviction, and therefore that the FJDA could not have been violated. Id. The jury charge in Spoone ___ ______ instructed, inter alia, that pre-majority conduct could provide _____ ____ context for evaluating the defendant's knowledge of the conspira- _________ cy, as an aid in assessing evidence of his conduct after age ________ __ ___ _______ _____ ___ eighteen. Id. ________ ___ We think the better view is that adopted in Cruz, 805 ____ F.2d 1464: "once [the government] ha[s] established that certain acts of the offense occurred after the defendant's eighteenth birthday, the entire case may be tried in accordance with the adult rules of procedure and evidence." Id. at 1477. See supra ___ ___ _____ note 8; see also Doerr, 886 F.2d at 969-70 (adopting Cruz ap- ___ ____ _____ ____ proach). We are not persuaded that the restrictions advocated by appellants would afford significantly greater protection than appropriate cautionary and limiting instructions. We therefore hold that a criminal defendant's pre-majority conduct is admissi- ble on the same bases as other evidence, and does not alone compel severance of a youthful defendant's trial. C. Jury Instructions. C. Jury Instructions. _________________ Appellants further contend that the instructions did not properly limit jury consideration of their pre-majority 15 conduct. Although evidence of their pre-majority conduct was admissible against appellants for all purposes, see Cruz, 805 ___ ____ F.2d at 1477, we reject any proposed reliance on Cruz for the ____ proposition that the trial judge is the sole and final arbiter of the threshold determination as to the sufficiency of the evidence of post-majority conduct, or that further limiting instructions ____ to the jury are unnecessary once the evidentiary threshold has been met to the satisfaction of the trial court. See id. at ___ ___ 1476-77; see also Doerr, 886 F.2d at 970 (once the evidentiary ___ ____ _____ threshold has been met, the trial is "limited only by the Federal Rules of Evidence").11 An age-of-majority-spanning conspiracy is somewhat analogous to a criminal conspiracy that spans a bar date imposed by the statute of limitations. See Maddox, 944 F.2d ___ ______ at 1233; Gjonaj, 861 F.2d at 144. Although evidence of both pre- ______ and post-bar date conduct is fully admissible in such a case, the jury nonetheless must be instructed to acquit a defendant who withdrew from the conspiracy before the bar date. See United ________ ___ ______ States v. Piva, 870 F.2d 753, 756-57 (1st Cir. 1989); see also ______ ____ ___ ____ United States v. Juodakis, 834 F.2d 1099, 1102-04 (1st Cir. 1987) _____________ ________ (per curiam). The statute of limitations analog is imperfect, of course. The temporal demarcation under the FJDA is not identical ____________________ 11The approach approved in Cruz and Doerr appears to be ____ _____ based on Fed. R. Evid. 404(b), which allows evidence of a defen- dant's prior wrongful acts on such issues as motive and intent. However, in an age-of-majority-spanning conspiracy, the defen- dant's pre-majority conduct is not merely extrinsic evidence of a prior wrongful act, but an integral component of the alleged conspiracy for which he is on trial. 16 to a statute-of-limitations bar date, nor does it necessarily follow that appellants could be convicted as "adults" simply because there was no evidence that they withdrew from the age-of- majority-spanning conspiracy prior to attaining age eighteen.12 A more apt analogy for FJDA cases involving age-of-majority- spanning conspiracies may be the contract "ratification" doc- trine, which provides that a minor legally incapable of contract- ing may nonetheless affirm by his post-majority conduct. See ___ Maddox, 944 F.2d at 1233 ("a person who does absolutely nothing" ______ after age of majority cannot be held liable as adult) (citing John D. Calamari and Joseph M. Perillo, Contracts 8-4 (3d ed. _________ 1987)). We think the Maddox analogy better comports with the ______ fundamental principle that criminal liability is premised on some discernible actus reus, be it action or (in an appropriate case) _____ ____ intentional inaction. See United States v. Bishop, 469 F.2d ___ _____________ ______ 1337, 1348 (1st Cir. 1972) (Constitution prohibits punishment for mere status) (citing Powell v. Texas, 392 U.S. 514 (1968)); see ______ _____ ___ generally 1 Wayne LaFave & Arthur Scott, Substantive Criminal Law _________ ________________________ 3.2-.3 (1986). Under the Maddox approach, therefore, rather ______ ____________________ 12Statute-of-limitations bar dates serve extrinsic ends. See, e.g., Toussie v. United States, 397 U.S. 112, 114-15 (1970) ___ ____ _______ ______________ (limitations period protects individuals from charges brought after the basic facts have been obscured by time, and fosters diligent law enforcement). On the other hand, the "withdrawal" defense promotes the reporting, and preemptive thwarting, of criminal conspiracies. See Piva, 870 F.2d at 757. ___ ____ By the same token, in some instances the FJDA decriminalizes ______________ pre-majority conduct by divesting federal courts of criminal ___ jurisdiction and establishing a separate juvenile justice system whose primary focus is on offender rehabilitation. See 18 U.S.C. ___ 5032; see also S. Rep. No. 1011, supra note 6; In re Sealed ___ ____ _____ _____________ Case, 893 F.2d at 367. ____ 17 than face conviction simply for failing to "withdraw" from the age-of-majority-spanning conspiracy prior to attaining age eighteen, there could be no conviction unless the jury found that appellants in some manner "ratified" their participation in the conspiracy after attaining majority.13 In all events, whatever the precise contours of the "ratification" theory in the context of an age-of-majority- spanning conspiracy, the instructions in this case required significantly more post-majority conspiratorial conduct than the FJDA mandates. The district court instructed the jury as fol- lows: [T]he defendant's juvenile acts may not be considered as proof of his participation in the conspiracy unless the jury first finds that he participated in the conspiracy after his eighteenth birthday. . . . In other words, you can't consider the acts before ___ _____ ________ ___ ____ ______ their eighteenth birthday unless you first _____ __________ ________ ______ ___ _____ find beyond a reasonable doubt that they ____ ______ _ __________ _____ ____ ____ participated in the conspiracy after they ____________ __ ___ __________ _____ ____ attained the age of eighteen years. ________ ___ ___ __ ________ _____ (Emphasis added.) The challenged instruction effectively re- quired the jury to determine whether evidence of appellants' post-majority participation in itself was sufficient to support __ ______ appellants' convictions. Similarly, under the "moving train" theory, knowing participation in any act in furtherance of a ____________________ 13Juries commonly are called upon to make similar distinc- tions in determining the criminal liability of codefendants as accessories, a task which requires findings both as to the underlying offense and the codefendants' association with the principal. See, e.g., United States v. Ortiz, 966 F.2d 707, 711- ___ ____ _____________ _____ 12 (1st Cir. 1992) (collecting cases), cert. denied, 113 S. Ct. _____ ______ 1005 (1993). 18 conspiracy entails full conspiratorial liability. See United ___ ______ States v. Rivera-Santiago, 872 F.2d 1073, 1079 (1st Cir.), cert. ______ _______________ _____ denied, 492 U.S. 910 (1989); United States v. Baines, 812 F.2d ______ _____________ ______ 41, 42 (1st. Cir. 1987). Thus, the jury was not left free to convict appellants based solely on an "act of juvenile delinquen- cy," but only if it found post-majority conduct sufficient to ____ establish beyond a reasonable doubt that appellants participated in the conspiracy alleged in the indictment. D. Sufficiency of the Evidence. D. Sufficiency of the Evidence. ___________________________ "[E]schewing credibility judgments and drawing all reasonable inferences in favor of the verdict," we evaluate the sufficiency of the evidence with a view to whether the verdict "draws its essence from a plausible reading of the record" and whether the jury rationally could have determined that the government established every element of the charged offense beyond a reasonable doubt. Sepulveda, No. 92-1362, slip op. at 7 _________ [___ F.3d at ___]; see United States v. Clifford, 979 F.2d 896, ___ _____________ ________ 897 (1st Cir. 1992) ("'Nor does the government have to disprove every reasonable hypothesis of innocence.'") (citation omitted). Appellants question the sufficiency of the evidence on but one element of the offense their voluntary or "meaningful" post- majority participation in the conspiracy. We find no shortfall. No less than five witnesses testified to overt conduct by Driesse from which the jury reasonably could have found direct participation in the Sepulveda conspiracy following his eigh- teenth birthday on April 6, 1988. In the "summer of 1988," 19 Driesse delivered an ounce of cocaine to the residence of John Rice; after Rice complained to Edgar Sepulveda that the cocaine Driesse had delivered was underweight, Driesse collected $1150 from Rice. Daniel Santos accompanied Driesse and the Sepulvedas on a drug run to Massachusetts in the "summer of 1988," at the culmination of which Driesse "threw [Santos] the coke." Driesse later admitted to Rice that he had made another drug run to Massachusetts with codefendant Ernest Langlois in late 1988 or early 1989. Moreover, Randall Vetrone and Norberto Perez bought cocaine from Driesse several times a week throughout 1989. Finally, in April 1989, David Sepulveda referred Kurt Coriarty to Driesse as a source of cocaine. Four witnesses testified to overt conduct by Shane Welch from which the jury reasonably could have inferred partici- pation in the conspiracy following his eighteenth birthday on November 20, 1989. In late 1989 and early 1990, Santos, Vetrone and Rice purchased cocaine from Welch, usually at Edgar Sepul- veda's residence, and on some occasions Welch himself conducted these transactions. On March 6, 1990, Welch accompanied Santos and the Sepulveda brothers on a drug run to Massachusetts for the announced purpose of replenishing the Sepulvedas' cocaine _________ inventory. During this run, when he discovered they were under surveillance by local police, Welch warned Santos. Detective Vallante arrested Welch after he stopped Santos's car, and the 20 cocaine was seized.14 Following his return to New Hampshire, Welch also served as a fledgling "enforcer" for Sepulveda, at one time attempting to break down the door at the Vetrone residence. The only attack appellants mount against all this evidence is that it is incredible, a challenge foreclosed by the jury's credibility determination. See United States v. David, ___ _____________ _____ 940 F.2d 722, 730 (1st Cir. 1991). Thus, there was ample evi- dence of post-majority participation to overcome appellants' ____________________ 14Shane Welch raises one separate issue. Pointing to his March 1990 state court conviction in Massachusetts for cocaine possession, criminal conduct which the federal indictment alleges as an overt act by Welch in furtherance of the Sepulveda conspiracy, Welch argues that the federal prosecution was barred by the Double Jeopardy Clause of the United States Constitution. As primary authority, he cites Grady v. Corbin, 495 U.S. 508 _____ ______ (1990), in which the Supreme Court stated that double jeopardy bars a subsequent prosecution "if, to establish an essential element of an offense charged in that prosecution, [the govern- ment] will prove conduct that constitutes an offense for which _______ the defendant has already been prosecuted." Id. at 510 (emphasis ___ added). Welch's argument fails for at least two reasons. First, it seems entirely possible that Grady, which involved two successive _____ state prosecutions, was not intended to override the longstanding _____ "dual sovereign" doctrine, which holds that successive prosecu- tions by federal and state governments normally do not implicate the Double Jeopardy Clause. See Heath v. Alabama, 474 U.S. 82, ___ _____ _______ 92-93 (1985) ("[A] single act constitutes an 'offense' against each sovereign whose laws are violated by that act."). Second, the Supreme Court mooted the entire matter in United States v. ______________ Felix, 112 S. Ct. 1377 (1992). "[L]ong antedating [Grady], and _____ _____ not questioned in [Grady], is the rule that a substantive crime, _____ and a conspiracy to commit that crime, are not the 'same offense' for double jeopardy purposes," so that "prosecution ... for conspiracy, where certain of the overt acts relied upon ... are based on substantive offenses for which the defendant has been previously convicted, does not violate the [Double Jeopardy] Clause." Id. at 1380, 1384. Indeed, prior to Felix, we gave ___ _____ Grady the same gloss. See United States v. Rivera-Feliciano, 930 _____ ___ _____________ ________________ F.2d 951, 954-55 (1st Cir. 1991), cert. denied, 112 S. Ct. 1676, _____ ______ and cert. denied, 113 S. Ct. 221 (1992). One year after Felix, ___ _____ ______ _____ the Supreme Court explicitly overruled Grady. United States v. _____ _____________ Dixon, 113 S. Ct. 2849, 2860 (1993). _____ 21 "mere bystander" defenses. II. Claims Made Exclusively by Driesse.15 II. Claims Made Exclusively by Driesse. __________________________________ A. Coconspirator Statements. A. Coconspirator Statements. ________________________ Driesse claims that the district court committed rever- sible error by allowing the government to introduce, over timely objection, an inadmissible hearsay statement. James Noe testi- fied that he was told by Robert Labrecque, Driesse's cousin, that Labrecque was selling cocaine for Driesse in late 1988 and early ___ _______ 1989; that is, after Driesse reached age eighteen. No reason was _____ assigned for admitting the hearsay statement over the Driesse objection. Moreover, Driesse contends that the government failed to prove by a preponderance of the evidence that Labrecque was a "coconspirator," Fed. R. Evid. 801(d)(2)(E), whose statement would have been admissible if made "in furtherance of the con- spiracy." "[A] [putative] coconspirator's statement, standing ________ alone, is insufficient to meet the preponderance standard of Rule _____ 801(d)(2)(E)"; the proponent of the statement must submit some extrinsic evidence of the declarant's involvement in the conspiracy. Sepulveda, No. 92-1362, slip op. at 29-30 [___ F.3d _________ at ___]. There is no such extrinsic evidence in the record. Labrecque's statement was the sole source of Noe's knowledge ____ ____________________ 15We need not discuss certain other contentions Driesse raised in common with his codefendants, the merits of which were considered in Sepulveda, No. 92-1362, slip op. at 55 [___ F.3d at _________ ___], including his challenges to the bill of particulars, see ___ id. at 57-58, and the government's closing arguments, see id. at ___ ___ ___ 39-49. 22 about Labrecque's complicity. Beyond that, Noe simply testified that Driesse and Labrecque were "cousins," who lived in the same apartment project, and that Noe had observed Labrecque "with" Driesse on previous occasions. See United States v. Gomez, 921 ___ _____________ _____ F.2d 378, 381 (1st Cir. 1991) (mere "association" does not estab- lish conspiratorial involvement). Although Noe sold cocaine to __ Labrecque for Labrecque's "use, not for [re]selling," Noe never observed Labrecque selling drugs, let alone doing so in Driesse's company, or "for" Driesse. Although the government argues that the trial court was permitted to conclude that it was "more likely than not" that Labrecque was an "unindicted coconspirator," except for the hearsay statement itself there was no evidentiary basis, only conjecture, to support such an infer- ence. Although admission of Noe's hearsay statement was error, we conclude that the error was harmless. See Fed. R. ___ Crim. P. 52(a). No less than five other witnesses offered unequivocal testimony with respect to Driesse's active involve- ment in the conspiracy. See supra Section I.D. Thus, the ___ _____ Labrecque hearsay statement was merely cumulative, and had no significant effect on the verdict. See United States v. Dworken, ___ _____________ _______ 855 F.2d 12, 26 (1st Cir. 1988).16 ____________________ 16Driesse asserts that the government laid an evidentiary "trap" for the unwary defense team, when it elicited testimony from Randall Vetrone on direct examination that he had purchased stolen property previously. The government did not go on to inquire into the identity of Vetrone's source. On cross-examina- tion by counsel for one of Driesse's codefendants, Vetrone testified that he had bought the pilfered goods from Driesse. 23 B. "Missing Witness" Instruction. B. "Missing Witness" Instruction. ____________________________ Driesse contends that he was entitled to a "missing witness" instruction, which would have permitted the jury to infer, from "'the failure of a party to produce available evi- dence that would help decide an issue, . . . that the [missing] evidence would [have been] unfavorable to the party to whom it is available or whom it would normally be expected to favor.'" United States v. St. Michael's Credit Union, 880 F.2d 579, 597 _____________ ___________________________ (1st Cir. 1989) (citation omitted). As the proponent of such an instruction, Driesse was required to show that the absent witness (Labrecque) would have been (1) "favorably disposed" to testify in the government's behalf by virtue of his status or relation- ship to the parties, (2) "peculiarly available" to the govern- ment, or (3) within the government's "exclusive control." Id. __ ___ Driesse asserted that Labrecque could more easily have been located by the government since he was under the probationary supervision of the New Hampshire Department of Corrections. We review the refusal to give a "missing witness" ____________________ Driesse moved for mistrial, contending that the government's "trap" evidenced prosecutorial misconduct, which resulted in the admission of otherwise inadmissible evidence. See Figueroa, 976 ___ ________ F.2d at 1453 ("other crime" evidence generally inadmissible to show bad character or unrelated criminal activity); United States _____________ v. Eatherton, 519 F.2d 603, 611 (1st Cir.) (same), cert. denied, _________ _____ ______ 423 U.S. 987 (1975). We find no evidence of prosecutorial misconduct in the government's anticipatory proffer. The govern- ment explains that it divulged the evidence of Vetrone's past criminal activity in order to preempt the defense from impeaching Vetrone on cross-examination. Given the reasonableness of its trial tactic, the government cannot be faulted for the seemingly irrelevant follow-up question the defense chose to put to Vet- rone. 24 instruction for abuse of discretion. United States v. Arias- _____________ ______ Santana, 964 F.2d 1262, 1268 (1st Cir. 1992). Given the avail- _______ able evidence that Driesse and Labrecque were family members who had resided in the same apartment project, Driesse can make no serious claim that Labrecque was naturally predisposed to testify for the government. Moreover, given the familial relationship, the bare fact that Labrecque was a state probationer did not establish that he was peculiarly available to the government, let __________ alone unavailable to Driesse. Indeed, the government provided the defense with Labrecque's two last-known addresses, cf. St. ___ ___ Michael's Credit Union, 880 F.2d at 598 (upholding denial of _______________________ instruction where government allegedly knew missing witness's whereabouts during trial), attested that he was not in the government's control, and disavowed any intention (or need) to call Labrecque as a witness.17 In these circumstances, absent any evidence that Labrecque was not available to his cousin ____________________ 17As noted, see supra Pt. II.A, Labrecque's testimony, even ___ _____ if favorable to the government, would have been largely cumula- tive, giving rise to a plausible explanation for the government's decision not to investigate his whereabouts or to call him as a witness. United States v. Johnson, 467 F.2d 804, 808 (1st Cir. ______________ _______ 1972), cert. denied, 410 U.S. 909 (1973) ("No [adverse] inference _____ ______ is permissible, however, where the unpresented evidence would be merely cumulative ...."); United States v. Norris, 873 F.2d 1519, _____________ ______ 1522-23 (D.C. Cir.) (trial court may consider all of the cir- cumstances in determining entitlement to "missing witness" instruction, including whether the government simply bypassed calling the witness because his testimony "'would likely have been merely cumulative or corroborative'") (citation omitted), cert. denied, 493 U.S. 835 (1989). Were it not for this common- _____ ______ sense approach, the government could be held presumptively responsible for failing to call any person who might have been _____ able to provide relevant testimony, even though the evidence was presented through some other witness. 25 Driesse, or that the government interfered with any effort to locate or produce Labrecque at trial, the district court acted well within its discretion in denying a "missing witness" in- struction. C. Sentencing. C. Sentencing. __________ Finally, Driesse challenges the drug quantity calcula- tion recommended in the presentence report (PSR) and relied on by the court at sentencing. The PSR calculation was based on the trial testimony of Norberto Perez that Driesse accompanied Perez on "about 20" drug runs between 1987 and 1989, involving from one kilogram to 113.4 grams of cocaine per trip. The PSR assigned an average of 16 ounces per trip, resulting in a total estimate of 9.09 kilos (or 320 oz.). Thus, Driesse was assigned a base offense level (BOL) of 32 (5-15 kilograms). Where the sentencing court relies solely on the rough ______ drug quantity estimates of a lay witness, expressed in terms of a range, rote averaging is an insufficiently reliable basis for a _____ supportable drug quantity finding. Sepulveda, No. 92-1362, slip _________ op. at 69-75 [___ F.3d at ___]. Unlike the sentences imposed on Driesse's codefendants, Tony Rood and William Wallace, which were based on rough ranging estimates not only of the number of drug runs but the cocaine quantity per trips, the only rough averaging involved in the drug quantity finding for the Driesse sentencing was the wide ranging estimate of the quantity of drugs per trip (4 ozs. to 1 kilogram). Nevertheless, since the lowest estimated quantity range (4 ozs.) per trip would yield a total drug quanti- 26 ty of approximately 2.3 kilograms, dropping Driesse well below BOL 32,18 we vacate his sentence, and remand for resentencing, in accordance with our decision in United States v. Sepulveda, ___ _____________ _________ F.3d ___, ___ (1st Cir. 1993).19 The judgments of conviction entered against Christopher The judgments of conviction entered against Christopher _______________________________________________________ Driesse and Shane Welch are affirmed. The sentence of Christo- Driesse and Shane Welch are affirmed. The sentence of Christo- _____________________________________ _________________________ pher Driesse is vacated and case No. 92-1370 is remanded for pher Driesse is vacated and case No. 92-1370 is remanded for _________________________________________________________________ resentencing in accordance with this opinion. resentencing in accordance with this opinion. ____________________________________________ ____________________ 18Driesse was assigned an additional 1.146 kilograms apart from the Perez testimony. In any event, even with this addition- al amount, the total drug quantity would be 3.446, well below the 5 kilogram threshold for BOL 32. 19All other arguments raised by these appellants are either dealt with by reference in Sepulveda, F.3d, (1st Cir. _________ ____ ___ 1993) (No. 92-1362), or plainly meritless. 27